### NATIONAL AID LIFE ASS'N v. PARTLOW.

No. 25982.   Oct. 20, 1936.

Rehearing Denied Nov. 10, 1936.

Snyder, Owen & Lybrand, for plaintiff in error.

J. D. Lydick, R. F. Barry, and Curtis P. Harris, for defendant in error.

PER CURIAM. On October 22, 1934, the National Aid Association, now National Aid Life Association, a corporation, issued its life benefit certificate or life insurance policy No. 720 to Della P. Partlow, naming therein Frank P. Partlow, her husband, defendant in error, plaintiff below, as her beneficiary. Della P. Partlow died on March 17, 1933. Due proof of death was made, but the defendant refused payment on said benefit certificate, and this action is brought by the beneficiary to recover $2,500 under the terms of said benefit certificate. The parties will be referred to herein as they appeared in the trial court.

At the conclusion of the evidence both plaintiff and defendant moved for a directed verdict in their favor, respectively. The attorney for plaintiff immediately thereafter withdrew his motion for a directed verdict, which withdrawal was denied by the court. The court thereupon made the following order:

"The Court: All right: exception allowed. As I view the matter, there is no question to submit to the jury. Both sides have made a motion for a directed verdict. It is a question of law, as I view it, and judgment will be rendered for the plaintiff for the amount sued for. Mr. Snyder: Give us an exception. The Court: Gentlemen of the jury, the court is of the opinion in this matter that it is a question of law for the court to decide. The clerk will prepare a form of verdict which will be passed to you, and one of you can sign it as foreman. Mr. Snyder: To which

ruling of the court the defendant excepts and also excepts to the order of the court for a directed verdict."

The sole question for determination in this case is whether the court erred in directing a verdict in favor of plaintiff. Section 1 of article 11 of the by-laws of the association provides for a regrouping of its members at the pleasure of the association as follows:

"Re-grouping: The management may, if deemed for the best interest of the National Aid Life Association, transfer, merge or rearrange the members of any group with another group."

The benefit certificate provides for the payment of dues in the sum of $5.20 per year, payable $2.60 semiannually in January and July. The association retained by its by-laws, however, the authority and right to transfer a member from one group to another and at the same time to change the dates of payment of said semiannual dues. According to the by-laws the annual dues of the association could not exceed $5.20 for any one year, and unless dues were paid within 15 days after they became due the insured was automatically suspended for nonpayment of dues. The benefit certificate designated the insured as a member of class No. 12 in which classification she remained until 1927 and paid semiannual dues of $2.60 as they became due on the 1st day of January and the 1st day of July, as follows:

| | |
|---|---|
| January, 1925 | July, 1926 |
| July, 1925 | January, 1927 |
| January, 1926 | July, 1927 |

On July 22, 1927, the insured was transferred from group No. 12 to group No. 16, and was notified in writing by the defendant to pay dues thereafter in April and October. Having already paid her semiannual dues on July 15, 1927, for the last half of the year 1927, the next semiannual dues would have been due and payable under the terms of said benefit certificate on the 1st day of January, or such other time as the defendant might designate, for the first half of the year 1928. Plaintiff contends that on October 1, 1927, he paid an additional sum of $2.60 as semiannual dues, interpreting the notice of July 22nd as a demand for dues in October, 1927. The defendant denies that payment was made. We will discuss that feature of the case further on in the opinion.

The insured paid the first half of 1928 dues in April, 1927, and paid semiannual dues thereafter as long as she remained in group No. 16, as follows:

| | |
|---|---|
| April, 1928 | October, 1930 |
| October, 1928 | April, 1931 |
| April, 1929 | October, 1931 |
| October, 1929 | April, 1932 |
| April, 1930 | October, 1932 |

Thereafter, and before the next semiannual dues were payable under group No. 16, viz., on February 20, 1933, the defendant transferred the insured to group No. 25 and notified her in writing to that effect, and notified her to pay dues thereafter on the 1st day of March and the 1st day of September of each year. In pursuance of said transfer and notice, and the provisions of said by-laws, the semiannual payment for 1933 would become delinquent on March 16, 1933. The semiannual dues falling due on March 1st were not paid on that date, nor within 15 days thereafter. The insured died on March 17, 1933.

1. It appears that Mrs. Robert Partlow, a relative of the insured, paid the semiannual dues of $2.60 on the day the insured died, but after her death had occurred, and made affidavit as to good health of the insured. These dues were promptly returned by the defendant to Mrs. Robert Partlow. It is needless to discuss this feature of the case, as it is obvious that this payment did not reinstate the policy, if in fact it had become delinquent,

2. Semiannual dues for the last half of 1927 were paid in July of that year, and if, as testified by the plaintiff, he or the insured paid semiannual dues in the sum of $2.60 again in October of the same year, because of the notice sent the insured by the defendant that dues were thereafter to be payable in April and October, it is obvious that the insured paid and the defendant received more than was due for that year. It is admitted that the dues subsequent to 1927 and up to and including the last half of 1932 were paid as they became due and payable, or at least there is no controversy in that connection over those payments.

In Fraternal Aid Ass'n v. Powers, 67 Kan. 420, 73 P. 65, it was held:

"Where more money was paid by a member to the local secretary for dues and assessments than was necessary to meet claims which had already accrued, the excess should be applied on subsequent and accruing dues and assessments, and the member will not be deemed to be in default so long as such excess is sufficient to meet the accruing claims of the association against the member."

To the same effect are Supreme Lodge of

Patriarchs of America v. Welsch (Kan.) 115 P. 15; Knight v. Supreme Council Order of Chosen Friends, 6 N. Y. S. 427; Caywood v. Supreme Lodge Knights and Ladies of Honor, 171 Ind. 410, 17 Ann. Cas. 503, and notes.

If, as a matter of fact, the plaintiff paid dues in July and October of 1927, it was the duty of the defendant to return the latter semiannual dues thus received within a reasonable time, or, if they were retained by the defendant, to give her credit for her semiannual dues for the first half of 1928, and she should have been relieved of the payment of the first half of 1928 semiannual dues. But it appears that the semiannual dues for the first half of 1928 were also collected and for each and every semiannual period until and including the last half of 1932.

If a double payment of semiannual dues had been made by the insured for the last half of 1927 and carried forward by the defendant as above indicated, the dues for the first half of 1933 would have been thereby paid and the benefit certificate would have been in good standing on March 17, 1933, at the time of the death of the insured. If, as contended by the defendant, who also introduced evidence in support of its contention, the plaintiff did not pay and the defendant did not receive the extra semiannual dues in October, 1927, then it is equally obvious that at the time of the death of the insured, on March 17, 1933, she was delinquent in the payment of her dues for the first half of said year, and the plaintiff would not be entitled to recover in this action. There is a sharp conflict in the testimony of the plaintiff and the defendant on this issue, and the issue as to whether or not dues were paid in October, 1927, constitutes a clear question of fact, which should have been submitted to the jury.

3. Although both plaintiff and defendant moved for a directed verdict, there being a conflicting question of fact to be determined the defendant was entitled to have that question submitted to and determined by the jury. In the case of Farmers National Bank of Tecumseh v. McCall, 25 Okla. 600, 106 P. 866, 26 L. R. A. (N. S.) 217, this court held:

"Plaintiff and defendant in the trial court having each verbally moved for peremptory instructions, this did not constitute a waiver of the right to have a verdict returned by the jury."

That rule has been consistently followed by this court in the following cases: Taylor v. Wooden, 30 Okla. 6, 118 P. 372; Midland Valley Ry. Co. v. Lynn, 38 Okla. 695, 135 P. 370; Hogan v. Milburn, 44 Okla. 641, 146 P. 5; Mid-Continent Life Insurance Co. v. Tackett, 149 Okla. 147, 299 P. 862.

The defendant excepted to the order of the court directing a verdict in favor of plaintiff and against the defendant. We have concluded that this presents reversible error. The court was not authorized to discharge the jury solely for the reason that each of the parties had moved for an instructed verdict, when there was a material issue of fact to be determined. For the reasons herein stated, said judgment is reversed and the cause is remanded.

The Supreme Court acknowledges the aid of Attorneys Eldon J. Dick, W. C. Franklin, and Joe Gill, Jr., in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Dick and approved by Mr. Franklin and Mr. Gill, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.