E. O. CANTERBERRY *v.* M. O. CANTERBERRY *et al.*

(No. 8717)

Submitted May 17, 1938. Decided June 21, 1938.

*Koontz & Hurlbutt, W. Elliott Nefflen* and *W. W. Goldsmith,* for appellant.

*H. W. B. Mullins* and *Taylor & Taylor,* for appellees.

RILEY, JUDGE:

E. O. Canterberry brought this suit against his brother, M. O. Canterberry, and his mother, Clara A. Canterberry, in her own right and as executrix of the will of G. F. Canterberry, deceased, to impeach a paper writing, which, some years previous, had been admitted to probate by the county court of Kanawha County as the last will and testament of the decedent, plaintiff's father, and praying for an issue *devisavit vel non* out of chancery. From a decree, based upon a directed verdict, adjudicating the paper writing as the true last will and testament of decedent, the plaintiff obtained this appeal.

This Court, on certificate, held that the suit had been brought within due time after the probate of the will,

and that the allegations of the bill of complaint were sufficient to raise an issue as to the execution of the paper writing as decedent's last will and testament. *Canterberry* v. *Canterberry et al.*, 118 W. Va. 182, 189 S. E. 139.

The will bequeathed to the plaintiff, E. O. Canterberry, the sum of $50.00; to the defendant, M. O. Canterberry, one-half of a certain storehouse and lot in the Town of Marmet, Kanawha County; and devised and bequeathed to the defendant, Clara A. Canterberry, the residuum of the estate. Clara A. Canterberry had in her own right the other one-half interest in the lot at Marmet.

The bill of complaint alleges that the paper writing is not decedent's last will and testament, and that it bears neither his signature nor seal. Exhibited with the bill is a photostatic copy of the alleged will. In the answer the material allegations of the bill of complaint are denied.

The paper writing was prepared on October 14, 1929, by an attorney at law. It consisted of two typewritten sheets of paper, the first sheet containing the body of the will, after which, near the bottom of the page, the language "In Witness Whereof: I have hereunto set my hand and seal this the 14th day of October, 1929" appears; and the second, an attestation clause for the witnesses with lines for their signatures. From the evidence it seems clear that the decedent signed his name on the first page on a line provided for his signature, to the right of which the word "seal" had been typewritten, and that he then signed his name on the second sheet, along the left-hand margin opposite and at right angles to the attestation clause, which clause was immediately followed by the signatures of the two witnesses who were present at the time the alleged will was executed. The evidence is equally clear that when this paper was offered for probate in the county clerk's office, a rectangular strip had been cut off from the right-hand corner of its first sheet, where the signature and seal of the testator were originally, so that the only place Canterberry's signa-

ture appeared was on the margin of the second page. The attorney explained that the signature was affixed to the second page simply for the purpose of connecting the two pages together.

Immediately after its execution, the paper was placed in an envelope by the attorney and delivered to Canterberry. From this time until June, 1930, the whereabouts of the will thus sealed in the envelope does not appear. Some time in the latter part of June, 1930, Mrs. Canterberry saw and read the will. She saw the will on other occasions, the last time being shortly before her husband's death.

According to the record, Mrs. Canterberry, some time before her husband's death, had placed the will, along with other papers belonging to him, in a paper bag and placed the bag between the mattress and springs of the bed which she and her husband occupied. This bed was occupied by her husband during his last illness, until he was taken to the hospital. He remained in the hospital only a short time, having died the day following the evening he arrived.

Mrs. Canterberry was unable to remember the date on which she first noticed the mutilation of the will. However, on October 30, 1930, when she produced the will at the clerk's office for probate, the rectangular strip heretofore referred to was missing.

It appears from Mrs. Canterberry's testimony that she swept the room the day after the funeral; that thereafter while sweeping the room again, she found on the floor a slip of paper with her husband's signature and the word "seal" thereon; that between the time she found the paper and the occasion of the first sweeping, the plaintiff, E. O. Canterberry, slept in the room, and, on that occasion, was in the room alone while she prepared breakfast. Plaintiff, on the other hand, testified that he did not recall having slept in the room, but he did not deny his mother's testimony. However, he testified that he did not learn of a will until about a week after the funeral and did not see the paper writing in controversy

until it became lodged in the county clerk's office subsequent to probate. In this regard, he is not controverted. Though it was to his interest to have the will destroyed, his testimony must be taken as true. The mere opportunity to mutilate the will is not evidence that he actually did it. We cannot say that the plaintiff, by the mere opportunity to commit a criminal act, can be charged with it. In fact, the presumption is the other way. 1 Page' on Wills (2d Ed.), sec. 776, p. 1322; *Holler* v. *Holler*, 298 Ill. 418, 131 N. E. 663.

The defendants (proponents), after the introduction of their evidence, were permitted over objection to amend the answer, setting out that after the will was probated, Clara A. Canterberry, as executrix, paid to the plaintiff the $50.00 legacy provided for in the will, and that plaintiff, by acceptance thereof, was thereby estopped to deny its validity. Plaintiff testified that he had not been paid as charged in the answer.

At the close of the evidence, plaintiff's counsel moved for a directed verdict, which motion was overruled. Thereupon, said counsel moved for an exclusion of all evidence except that the issue whether Mrs. Canterberry paid the $50.00 legacy be submitted to the jury. Likewise, this motion was overruled. Defendants' counsel then moved for a directed verdict, which motion was granted, and a verdict in defendants' favor was rendered at the court's direction.

It becomes pertinent at the outset to review the last mentioned proceedings, which occurred immediately after the close of the testimony. Defendants' counsel contend that a motion for a directed verdict is an admission that the record discloses no question of fact, so that, when both parties make such motions, the case is automatically taken away from the jury and all questions, both of law and fact, are placed in the hands of the court for solution (citing Abbott's Civil Jury Trials [5th Ed.], p. 740, sec. 338).

On this question the American authorities conflict. See generally, 18 A. L. R. 1433; 69 A. L. R. 633; 26

R. C. L. 1080, sec. 83. The cases are legion. A majority of them seems to support defendants' position. A few will suffice: *Electrical Products Consolidated* v. *El Campo, Inc.,* 105 Mont. 386, 73 Pac. (2d) 199; *Burke Grain Co.* v. *St. Paul-Mercury Indemnity Co.,* 94 Fed. (2d) 458; *Aetna Ins. Co.* v. *Kennedy to Use of Bogash,* 301 U. S. 389, 81 L. Ed. 1177, 57 Sup. Ct. 809; *Atlas Realty Co.* v. *Rowray* (Wyo.), 65 Pac. (2d) 1122; *Enelow* v. *New York Life Ins. Co.,* 83 Fed. (2d) 550, 105 A. L. R. 493, certiorari denied 298 U. S. 680, 56 Sup. Ct. 948, 80 L. Ed. 1401; *Fourth Nat. Bank of Montgomery* v. *Portsmouth Cotton Oil Refining Corporation,* 284 Fed. 718, affirming 280 Fed. 879; *Orr* v. *Waldorf-Astoria Hotel Co.,* 291 Fed. 343; *Gertner* v. *Glens Falls Ins. Co.,* 184 N. Y. S. 669, 193 App. Div. 836, affirmed 135 N. E. 921, 233 N. Y. 568. *Contra* see: *Laurens Glass Works* v. *Childs,* 49 Ga. App. 590, 176 S. E. 665; *Holliday* v. *Atlantic Coast Lumber Corporation,* 171 S. C. 250, 172 S. E. 219; *Perkins* v. *Good,* 179 Okla. 405, 65 Pac. (2d) 1218; *Phillips* v. *Smith,* 178 Okla. 379, 62 Pac. (2d) 1179; *Atlas Life Ins. Co.* v. *Holt,* 178 Okla. 28, 61 Pac. (2d) 719; *National Aid Life Ass'n.* v. *Partlow,* 178 Okla. 156, 61 Pac. (2d) 1070; *Modern Homes Realty Co.* v. *Lang,* 102 N. J. L. 635, 133 Atl. 389; *Wolfe* v. *Chicago Sign Printing Co.,* 233 Ill. 501, 84 N. E. 614, 13 Ann. Cas. 369.

The problem, however, is governed by our own practice and procedure. Under Section 13, Article III of our state constitution, there is reserved to every litigant in a common law action, when the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right to a trial by jury. Code 1931, 56-6-11, provides that in any case, except a felony, the parties or their counsel may waive the right to a trial by jury by *consent of record.* From the Virginia Code of 1849, the provision for waiver of a jury by consent has been in our statutory law. It has underlying it a salutary public policy. The consent, therein provided, is imperative for the waiver of the right. *Salzer* v. *Schwartz,* 88 W. Va. 569, 107 S. E. 298; *Lipscomb's Adm'r.* v. *Condon,* 56 W.

Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938. Guided as we are by our prevailing practice, we cannot say that motions for a directed verdict by both parties are tantamount to a waiver of a jury. Such position would contravene policy underlying our constitution and statutory law governing trials by jury; it does not conform with the practice which for many years has prevailed in the courts of this state; and its antithesis is not without authority. *Morris* v. *Muller,* 113 N. J. L. 46, 48, 172 Atl. 63; *Elder* v. *Woodruff Hardware & Mfg. Co.,* 16 Ga. App. 255, 85 S. E. 268; *Laurens Glass Works* v. *Childs, supra;* and *Gross* v. *Butler,* 48 Ga. App. 750, 173 S. E. 866. In the last mentioned case, the Court of Appeals of Georgia said: "The fact that upon the trial of a case it was 'contended' by counsel for both sides in open court that 'there was only a legal question involved and that the court should direct a verdict for one side or the other' does not amount to a consent by both parties that the case should be disposed of by a direction of a verdict by the court for one side or the other." "In taking the case from the jury", said the New Jersey Court of Errors and Appeals in the rather recent case of *Morris* v. *Muller, supra,* "the trial court fell into error. It is not the rule in this state that when cross-motions for a direction of a verdict are made, all questions of fact are to be determined by the court, and not submitted to the jury. The mere making of the cross-motions does not amount to a consent that the case shall be taken from the jury." These views coincide with ours. Under the circumstances, the effect of plaintiff's motion for the submission of the issue as to the $50.00 legacy becomes moot, and it necessarily follows that this case must be considered as though the defendants alone made a motion for a directed verdict. That being so, every reasonable and proper inference deductible from the evidence must be made in plaintiff's favor. *Hambrick* v. *Spalding,* 116 W. Va. 235, 179 S. E. 807.

A review of the evidence, in the light of the principles of law governing cases such as this, would be profitable.

In the first place, the burden of proving a will rests upon the proponents. *Payne* v. *Payne,* 97 W. Va. 627, 125 S. E. 818; Page on Wills (2d Ed.), sec. 671. This burden never shifts. Page on Wills (2d Ed.), sec. 670. Upon the will having been established, however, the burden of proving its revocation devolves upon the contestant. Page on Wills (2d Ed.), sec. 772. Clearly, the record here discloses that the will was executed by the testator in accordance with the statute (Code 1931, 41-1-3). Its execution, in fact, is not controverted.

The query then arises whether plaintiff has shown a revocation. The signature on the first page undoubtedly was intended to be the signature which brought about the execution of the will. The one upon the margin of the second page, according to the scrivener, was for identification only. In this state (Code 1931, 41-1-7), the revocation of a will may be accomplished by the destruction of the testator's signature, by the testator himself or by some person in his presence and by his direction, with the intent to revoke. Thus it follows that if the conditions of the statute were not fulfilled by the mere deletion of the testator's signature, there could be no revocation.

But plaintiff's counsel say that the will at the time of testator's death was in his possession, and therefore its mutilated condition is accompanied by the presumption that he intended to revoke it. Mrs. Canterberry testified that she put the will and other papers in a paper bag, and placed the latter between the mattress and springs in the bed which she and her husband occupied; that "it was the same bed he was taken sick in off and on", and the one he occupied "up until he was taken bad and was taken to the hospital"; that after his death she found the will "there in the bed where we had it. * * * It was in the room we slept in. * * * Yes, sir, the one we occupied." She could not, however, state when she last looked at the will prior to her husband's death, except that "it had not been long". The evidence does not disclose the physical disability of the husband to destroy the

signature. If he did it, the very fact that it was cut and *not torn* is sufficient for a jury to infer that it was done with the intention to revoke. The evidence is silent as to whether or not he himself actually destroyed the signature. However, the evidence is sufficiently strong from which a jury could infer that the will was in his possession at the time he died. And being in his possession, found as it was in a mutilated condition, with the signature *cut* and *not torn off,* he is presumed to have deleted the signature with the intention of revoking the instrument. This presumption, however, is rebuttable, but the burden of producing such rebutting evidence rests with the proponents. *Cutler* v. *Cutler,* 130 N. C. 1, 40 S. E. 689, 57 L. R. A. 209, 89 A. S. R. 854; *McIntyre* v. *McIntyre,* 120 Ga. 67, 47 S. E. 50, 102 A. S. R. 71, 1 Ann. Cas. 606. "The finding of the will in the testator's desk with his signature cancelled", said the New York Court, "raised the presumption that the cancellation was done by him with the intention of revoking it." *In the Matter of Hopkins' Will,* 172 N. Y. 360, 65 N. E. 173, 65 L. R. A. 95, 92 A. S. R. 746. We are prompted to say that the jury in this case was competent to pass upon the question whether the will was revoked by the testator.

We therefore reverse the decree of the circuit court and remand the case for further proceedings not inconsistent with the principles herein announced.

*Reversed and remanded.*