*In Re:* THE ESTATE OF
J. HAMMOND SILER, JR., *Deceased*

(No. 13108)

Submitted February 1, 1972.    Decided March 21, 1972.

*Martin & Seibert, Clarence E. Martin, Jr.,* for appellant.

*Lacy I. Rice, Sr., Richard L. Douglas, Rice, Hannis, Rice & Wagner,* Old National Bank, etc., Executor, for appellee.

CARRIGAN, JUDGE:

On June 28, 1971, this Court granted an appeal and supersedeas from an order of the Circuit Court of Morgan

County entered December 11, 1970, which overruled a motion to set aside a judgment of that court entered on September 28, 1970, upon a verdict returned by a jury, finding that the hereinafter set forth and considered paper writing was the last will and testament of J. Hammond Siler, Jr. This case was heard on February 1, 1972, upon briefs and oral argument of counsel.

The appellant before this Court is Harry V. Campbell, the sole heir at law on Siler's paternal side, hereinafter referred to as the contestant. The Old National Bank of Martinsburg and R. Lewis Bentz as executors, and the legatees named in the holographic writing of August 6, 1962, some of whom are also heirs at law of Siler on his maternal side, are appellees, hereinafter referred to as proponents.

J. Hammond Siler, Jr., a seventy-year-old unmarried resident of Morgan County, West Virginia, died on September 24, 1969, as a result of injuries received in an automobile accident, survived only by paternal and maternal heirs at law. The record disclosed that he was a well-educated and widely-traveled gentleman; that he had held various responsible positions with the Federal Reserve Bank of Richmond, Virginia, prior to his retirement, and that there was no dispute that he had sufficient mental capacity at the date of the purported holographic will, or thereafter until his death, to execute a will.

The paper writing, dated August 6, 1962, purporting to be a will, and wholly in the handwriting of Siler, was found after his death in the bedroom of his residence, and the probate of this paper writing is the subject of this appeal. A careful search of Siler's home and effects failed to disclose any other purported will.

Hereinafter reproduced is a copy of the holographic writing of August 6, 1962, which the proponent executors seek to establish as Siler's will by this litigation.

Proponent's
Exhibit no. 1

I, J. Hammond Siler Jr. of Berkeley Springs, Morgan County, West Virginia do make & declare this as my last will and statement hereby, declaring void all other wills by me heretofore made.

First. Recognizing the uncertainties of this life, and in full knowledge that the bequests hereinafter made do not necessarily represent the most desirable distribution of my estate, I direct that the sum of $1,000. be provided for a memorial tablet in St. Mark's Protestant Episcopal Church, Berkeley Springs, W. Va. in memory of the Christian, unselfish life of my late devoted mother, Jessie Castleman Siler and her ceaseless service to the church, and to my ever faithful and devoted father, the late J. Hammond Siler, a Senior Warden for many years. If this bequest is not accepted and carried out, I direct that such sum revert to the corpus of my estate.

Second. I direct that, a neatly designed monument unless erected in the meanwhile, be placed in the section of Greenway cemetery, Berkeley Springs, W Va. containing

#2

the earthly remains of my before mentioned parents, and myself. with appropriate inscriptions placed thereon.

as much as may be needed of the sum of $1800 is to be used (a) for the purpose aforesaid, (b) for additional beautification. (c) to place said lot in perpetual care (d) to place in perpetual care the lot of my grandfather the late John I. Siler in said cemetery, if not already in perpetual care, and (e) to place in perpetual care the Castleman family lot of my mother located in Berryville, Virginia, if not already in perpetual care

Third. I direct that the sum of $500 — cash be paid to Mrs. Goldie M. Legry of Berkeley Springs, W. Va. for her service to my mother and father, and to me, if she be living, otherwise this bequest is void.

Fourth. I direct that the sum of $5,000 — be provided toward the erection of a suitable brick building for the housing and offices of the

# #3

Morgan county library, which my late mother founded and developed, provided the Town of Bath and Morgan county contribute not less than $15,000 additional for such purpose. This bequest is conditioned upon formal acceptance by the said Town and county within eight months after my death, with the further proviso that a competent, certified architect be employed to design the building and supervise its construction and completion, rejecting all work as done if not of the highest standard. Provision may be made in this structure to house a modest historical room.

Fifth: The two Town of Bath real estate parts of my estate is devised to my second cousin Mrs. Paul (Virginia) Hagner of Baltimore, Md. with the admonition to consider carefully before disposing of either of them. In the event of the death of the said Mrs. Paul Hagner before this bequest becomes effective, I direct that said properties be held and administered in trust for her living heirs

#4

~~children until the youngest reaches age 21~~

Sixth. All furniture, silver, ~~and~~ silverware, ~~cash~~ and other personal property are to divided among the relatives named below: ~~on the~~ ~~proportionate~~ percentage basis ~~of appraised net appraised~~ estate value, ~~excluding~~ the cash bequests under paragraph First, Second, Third and Fourth hereof amounting to $8300, as follows:

~~Mrs.~~ Rebecca Carter ~~Fox~~
Berryville, Va.     ~~approximately~~ ~~70%~~

Mrs. William E. Ellis.
Henderson, N.C.     "     8%

Mrs. Paul Hegner,
Baltimore, Md.     "     85%

~~My parents and I having already made material second contributions in one form or another to Mrs. Rebecca H. Shepherd of Richmond Va., she is specifically excluded from participating or sharing in my estate.~~

Seventh. In the event any person named herein or others not named who may come forward alleging a claim or interest in my estate, undertaken

#5

the content any provision of this my last will and testament, I declare and direct such person or persons be denied any ~~portion~~ or participation in my estate. ~~but be given~~

Eighth. I hereby nameth and appoint the Old National Bank, Martinsburg, W. Va. and Mr. R. Lewis Bentz, 127 East Burke St. Martinsburg W. Va, ~~if the latter be living~~ co-executors of this my last will and testament and direct that they serve without being required to give bond.

Ninth. In attestation of all of the foregoing provisions, I hereunto affix my signature to the foregoing writing which is wholly in my own handwriting, on this sixth day of august in the year 1962.

Verdel ~~~~ revision
9/13/68

Immediately following Siler's funeral, The Old National Bank of Martinsburg qualified as Administrator of his estate, ostensibly for protection of the estate. On November 20, 1969, The Old National Bank of Martinsburg offered the paper writing dated August 6, 1962, for probate in solemn form before the County Court of Morgan County, and following a hearing in which the contestant appeared, the County Court admitted said paper writing to probate as and for the last will and testament of Siler. From this action of the County Court, the contestant took a timely appeal to the Circuit Court of Morgan County.

Upon a jury trial held in the Circuit Court proponents introduced into evidence the paper writing dated August 6, 1962, and also testimony of witnesses which disclosed that on September 13, 1968, decedent had removed this paper writing from its place of safekeeping in The Old National Bank. The undisputed testimony shows that various provisions of this writing were drawn through with lead pencil, the signature had numerous lines drawn through the same in ink, the words and figures "Voided for revision 9/13/68" were also written in Siler's handwriting in ink. It is also undisputed that these markings and words were on this purported will when it was first discovered in Siler's home, and there is no evidence that any person other than Siler had made, or had the opportunity to make, these markings or to cancel and delete the signature on said purported will. An examination of the purported will, hereinbefore set forth, more accurately shows the condition of the same when first found, and when admitted to probate by order of the county court.

At the conclusion of proponents' evidence, the contestant moved for a directed verdict assigning as grounds: that proponents had not sustained the burden of proof in establishing the purported paper as Siler's last will and testament in that there was no evidence from which the jury could find that the purported will was intended by Siler to be his last will, but that the undisputed evidence, including the words in Siler's own handwriting, showed

that the purported will was revoked; that Siler had cancelled and obliterated his signature in accordance with Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended, with the intent to revoke, and Siler had not re-executed or revived said purported will in accordance with Section 8, Article 1, Chapter 41, Code of West Virginia, 1931, as amended; that there was a rebuttable presumption that a purported will found in a decedent's possession or effects with the signature excised or obliterated was revoked, and that these were matters of law and not facts for jury consideration. Contestant's motion was overruled.

Contestant then put in evidence the appointment of The Old National Bank of Martinsburg as administrator of the Estate of J. Hammond Siler, Jr., on September 29, 1969, also an appraisal of the estate of J. Hammond Siler, Jr., and a witness who testified as to a general conversation with Siler concerning revising wills from time to time.

At the conclusion of all the evidence both proponents and contestant moved for directed verdicts in their favor. Both of these motions were overruled by the trial court, apparently upon the basis that the jury should determine if Siler had, by his action in lining through his signature, the "intent" to revoke his will as provided for in Section 7, Article 1, Chapter 41, and also that Section 8, Article 5, Chapter 41 provides for a jury determination of what part or parts of the purported will, if any, were the true last will.

Proponents and contestant offered instructions, the giving or refusal of which is also assigned as error. The case was submitted to the jury following argument of counsel, together with three forms of verdict prepared by the court. The jury returned a verdict finding the holographic writing to be the true last will and testament of J. Hammond Siler, Jr., and the trial court entered a judgment order upon the verdict of the jury.

Contestant made a timely motion in writing to set aside the verdict and the judgment entered thereon and for a new trial or in the alternative for judgment in his favor. On December 11, 1970, the circuit court entered an order overruling contestant's motions, and it is from this action that the contestant now appeals.

The proponents in support of their position rely strongly upon the case of *Nelson* v. *Ratliffe*, 137 W.Va. 27, 69 S.E.2d 217 (1952), and particularly on Syllabus 3 thereof which purports to approve the "dependent relative revocation" or conditional revocation doctrine. The contestant relies on the case of *Canterberry* v. *Canterberry*, 120 W.Va. 310, 197 S.E. 809 (1938) on the theory that Siler had revoked his will in the manner provided by Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended, and had not revived the same in the manner provided by Section 8 of the same article and chapter. The trial court apparently was of the opinion that since this was a holographic will which Siler could amend if done in his own handwriting, the jury should decide if the theory of "dependent relative revocation" applied and have the effect of erasing all of the deletions including that of Siler's signature, and thus upon this theory reinstate the entire writing as a valid will. The trial court also apparently felt that this issue of testamentary validity should be submitted to the jury since Section 8, Article 5, Chapter 41, Code of West Virginia, 1931, as amended, required a jury trial, if demanded, to decide "what part or parts" of the writing was a valid will. The controlling question in this case is: Did the proponents establish a valid and unrevoked will?

The applicable part of Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended, reads as follows:

"No will or codicil, or any part thereof, shall be revoked, unless . . . by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

In the case before us the uncontradicted testimony is that this writing was in Siler's possession from "9/13/68," the date it was removed by him from the bank, until his death, and was in the defaced condition hereinbefore shown when found in his home and that the words "Voided for revision 9/13/68" are in Siler's handwriting. There is no evidence or any contention by proponents that any of the markings were made by anyone other than Siler. The evidence further shows that Siler had not made a new will although over a year elapsed between the date he withdrew the will and marked thereon "Voided for revision 9/13/68" and the date of his death.

Points 4 and 5, respectively, of the Syllabus in *Canterberry* v. *Canterberry*, 120 W.Va. 310, 197 S.E. 809 (1938) state:

> "Under Code 1931, 41-1-7, the destruction of a testator's signature to a will, by the testator himself or by some person in his presence and by his direction with intent to revoke, constitutes a revocation."

> "Where a will, in the testator's possession at the time of death, was found thereafter with the signature cut off, there is a rebuttable presumption that the testator excised the signature with the intention of revoking the will."

The burden of proving the proper execution of a *valid* will rests upon the proponents, and where, as in the present case, a defaced holographic will with the signature thereon mutilated is offered for probate and there is no evidence that anyone other than the maker had access to the writing, the burden is on the proponents to overcome the presumption that the maker had revoked the will. Proponents failed to overcome the presumption of revocation nor did they show any revival of the will as required by Section 8, Article 1, Chapter 41, Code of West Virginia, 1931, as amended. See *Franklin* v. *McLean*, 192 Va. 684, 66 S.E.2d 504 (1951) and *Canterberry* v. *Canterberry*, 120 W.Va. 310, 197 S.E. 809 (1938).

The proponents rely upon the case of *Nelson* v. *Ratliffe*, 137 W.Va. 27, 69 S.E.2d 217 (1952), and particularly upon Syllabus 3, which reads as follows:

> "If a testator obliterates, deletes, or cancels a will, having a present intent to make a new will as a substitute for the old, and the new will is not made, it is presumed that the testator preferred the old will to an intestacy and the first will will be given effect."

This case is cited and relied on by proponents as adopting in this State the doctrine of "dependent relative revocation," or the doctrine of conditional revocation. This doctrine is sometimes stated to be that where a testator cancels or destroys a will with a present intent of making a new one immediately and as a substitute, and the new will is not made, or fails of effect, it is presumed that testator preferred the old will to intestacy. 57 Am. Jur., *Wills,* Sec. 514.

The case of *Nelson* v. *Ratliffe*, 137 W.Va. 27, 69 S.E.2d 217 (1952), involved a typewritten will, which testatrix desired to change and gave to a relative for that purpose. The relative made certain marks and interlineations and deleted the signature on the will, testifying that this was done to guide him in the preparation of the new will, and that none of these markings or deletions of her signature on the typewritten will were done at testatrix's direction. A new will was prepared but never executed. This case is clearly distinguishable from the present case for in the *Ratliffe* case the evidence showed testatrix did not direct the mutilation of the will with the intent to then and there revoke the same. In the case now before us it is undisputed that the mutilation of the will and signature and the words "Voided for revision" were Siler's own actions.

A majority of this Court is of the opinion that the doctrine of "dependent relative revocation" as stated in Syllabus 3 of *Nelson* v. *Ratliffe*, 137 W.Va. 27, 69 S.E.2d 217 (1952), is not applicable to the factual situation in the instant case. However, the writer of this opinion,

believing that Syllabus 3 of the *Ratliffe* case will continue to mislead practitioners in this State, would have over-ruled that case insofar as it purports to adopt the "dependent relative revocation" doctrine. This "dependent relative revocation" doctrine has never been cited by this Court either before or since the *Ratliffe* case, and it further appears from a reading of that case that this doctrine was not necessary to its decision, since the testatrix therein had not directed the mutilation of her signature or her will as required by statute to revoke a will. The *Ratliffe* case could have been decided on the basis of lack of "intent to revoke" the will by testatrix, under Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended, without reference to the "dependent relative revocation" theory.

In this writer's opinion, this doctrine is fallacious and untenable since to apply it and revive a revoked will, despite the fact that the testator quite obviously did not wish the disposition of his estate to be made in the manner set forth in the revoked will, is to do exactly what testator did not intend. This doctrine substitutes the will of the court for the will of the decedent.

The *Canterberry* case is similar to the present case, except that in *Canterberry* there was conflicting evidence as to whether someone other than testator had the opportunity to mutilate that will. Here there is no evidence to show that the Siler will was mutilated by anyone other than Siler himself. The clear implication to be drawn from the uncontroverted evidence in this case is that Siler's acts of mutilation were done with the intention of revoking the writing of August 6, 1962, as his last will and testament in the manner provided by Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended. The "intent to revoke" contained in Section 7, Article 1, Chapter 41, Code of West Virginia, 1931, as amended, refers to the conscious and purposeful act of the testator, as opposed to the mistaken, accidental or unintentional cutting, tearing, burning, obliterating, canceling or destroying of the will or testator's signature.

There is no evidence to show that Siler's signature was cancelled and obliterated by mistake, accident or inadvertence, but it appears that Siler knowingly and purposely cancelled his signature. There was no question of intent to be submitted to the jury.

The fact that Section 8, Article 5, Chapter 41, Code of West Virginia, 1931, as amended, provides for a jury trial on appeal from a probate order, if demanded, does not prevent the trial court from directing a verdict or from setting aside a verdict under proper circumstances.

In *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123, (1953), this Court held in Syllabus Points 21, 22, 23 and 24, respectively:

> " 'A jury will not be permitted to base its findings of fact upon conjecture or speculation.' Point 1, Syllabus, *Oates v. Continental Insurance Company*, 137 W.Va. 501."

> "When on motion by a party for a directed verdict in the trial of an issue *devisavit vel non* in a suit to impeach a will it appears that the court, upon the evidence presented, would be required to set aside a verdict in favor of the opposite party, the motion to direct a verdict should be sustained."

> "Upon a trial by a jury of an issue *devisavit vel non* the court may, when proper, as in an action at law, direct or set aside a verdict."

> "A verdict which is without evidence to support it or is against the clear preponderance of conflicting evidence will, on proper motion, be set aside by the court."

It is immaterial that the *Ritz* v. *Kingdon* case involved an issue *devisavit vel non* and the present case is an appeal from a probate order, the trial court may direct a verdict or set aside the jury verdict in either case in a proper circumstance.

Syllabus 5 of the case of *LaRue* v. *Lee, Executors*, 63 W.Va. 388, 60 S.E. 388 (1908), holds:

"It is the duty of a trial court, if requested, to direct a verdict for the party who has adduced evidence sufficient to warrant a verdict in his favor, and no evidence appreciably tending to overthrow the case so made has been adduced by the opposite party."

For the foregoing reasons, this Court finds that the trial court should have found that the purported will, dated August 6, 1962, had been revoked and was not the last will and testament of J. Hammond Siler, Jr., and should have directed a verdict in favor of the contestant, and should not have submitted the issue to the jury. Since this is decisive of the case it is unnecessary to pass upon the other errors assigned by contestant.

This case is remanded to the Circuit Court of Morgan County with direction to enter a judgment order in accordance with this opinion.

*Reversed and remanded with direction.*