447 S.E.2d 9

**Pearl Todd MILLER, Plaintiff Below, Appellant,**

v.

**George Edward TODD, as Executor of the Estate of Bertha Todd, and George Edward Todd, individually, Defendant Below, Appellee.**

No. 22042.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1994.

Decided July 11, 1994.

---

**PER CURIAM:**

This is an appeal from an order entered in the Circuit Court of Raleigh County granting the appellee's motion for summary judgment concerning the validity of a will executed by Mrs. Bertha Todd in 1986 and, further, granting the appellee's motion to dismiss the entire action. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the judgment of the circuit court is affirmed.

### I

Pearl Todd Miller (hereinafter "appellant") is the daughter of Bertha Todd, who died on June 1, 1990, leaving a multi-million dollar estate. Prior to her death, Mrs. Todd had executed various documents, each designated as her .Last Will and Testament and each containing language revoking any and all prior wills and codicils.[1] The will executed most recently before Mrs. Todd's death, a document dated August 22, 1986, was admitted to probate on June 24, 1990. The appellant's brother, George Edward Todd (hereinafter "appellee"), was appointed the executor of Mrs. Todd's estate by the County Commission of Raleigh County.[2] In this will, Mrs. Todd left to the appellant, her daughter, the sum of $25,000. The remainder of her estate, both real and personal property, was left to her son, the appellee.[3]

William L. Mundy, Renatha S. Garner, Mundy & Adkins, R.R. Fredeking, II, Fredeking & Fredeking, Huntington, for appellant.

Ned H. Ragland, Jr., W.A. Thornhill, III, Beckley, for appellee.

1. *W.Va.Code,* 41–1–7 [1923] provides:

No will or codicil, or any part thereof, shall be revoked, unless under the preceding section [§ 41–1–6], or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke.

2. Paragraph four of Mrs. Todd's 1986 will states:

I designate and appoint my son, GEORGE EDWARD TODD, of Beaver, West Virginia, as Executor of this my Last Will and Testament, and vest him with full power and authority to do any and all things necessary and convenient for the complete administration and settlement of my estate.

3. Mrs. Todd's will of August 22, 1986 provides, in relevant part:

*SECOND:* I give and bequeath to my daughter, PEARL TODD MILLER, the sum of Twenty–Five Thousand Dollars ($25,000.00) provided she shall survive me. If my said daughter, PEARL TODD MILLER, shall not survive me, I direct that said sum of Twenty–Five Thousand Dollars ($25,000.00) be distributed as part of my residuary estate as set forth in Article THIRD hereof.

*THIRD:* I give, devise and bequeath to my son, GEORGE EDWARD TODD, all of the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever nature and character and wheresoever situate of which I may die seized or possessed or in or to which I may have any right, title, claim, interest or reversion.

In an affidavit dated October 18, 1991, Mrs. Todd's attorney, Ned H. Ragland, Jr., stated that he prepared the August 22, 1986 will when it was believed that a will previously executed by Mrs. Todd, on July 30, 1984, was destroyed when his law offices burned. The 1986 will was apparently executed to simply reflect the "lost" 1984 will.[4] However, according to Mr. Ragland's affidavit, he ultimately discovered, after the 1986 will had already been executed, that the 1984 will had, in fact, not been destroyed.[5]

Mr. Ragland's affidavit further stated that two other wills had previously been executed by Mrs. Todd. These wills, dated January 5, 1972 and June 9, 1977 and attached to the appellee's motion for summary judgment as Exhibits A and B, respectively, were prepared by Mrs. Todd's former attorney, Herbert Underwood. The 1972 will[6] made no provision for the appellant, but did not expressly exclude her, and purported to place most of Mrs. Todd's estate in the hands of a trustee, with certain real and personal property passing directly to the appellee.[7]

Like the 1984 and 1986 wills, the 1977 will left to the appellant the sum of $25,000.[8]

---

4. The July 30, 1984 will provided, in relevant part:

> SECOND: I give and bequeath to my daughter, PEARL TODD MILLER, the sum of Twenty–Five Thousand Dollars ($25,000.00) provided she shall survive me. If my said daughter, PEARL TODD MILLER, shall not survive me, I direct that said sum of Twenty–Five Thousand Dollars ($25,000.00) be distributed as part of my residuary estate as set forth in Article THIRD hereof.
> THIRD: I give, devise and bequeath to my son, GEORGE EDWARD TODD, all of the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever nature and character and wheresoever situate of which I may die seized or possessed or in or to which I may have any right, title, claim, interest or reversion.

5. A signed copy of Mrs. Todd's 1984 will was attached to the appellee's motion for summary judgment as Exhibit C.

6. The copy of Mrs. Todd's 1972 will attached to the appellee's motion for summary judgment is unsigned.

7. The 1972 will provided, in part:

> II.
> I give and bequeath all of my personal property, exclusive of household furnishings, personal clothing and farm equipment, to Herbert G. Underwood of Clarksburg, West Virginia, as Trustee, to be held, managed and administered by him in trust upon the terms and conditions hereinafter set forth.
> III.
> I give and devise all of my real estate with the exception of that situate in Raleigh County, West Virginia, which I may own at the time of my death to Herbert G. Underwood, as Trustee, to be held, managed and administered by him in trust upon the terms and conditions hereinafter set forth.
> IV.
> All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my son, George Edward Todd,

for his lifetime only, and upon his death the remainder shall pass to Herbert G. Underwood, as Trustee, in accordance with the terms and conditions of the trust hereinafter set forth.
> V.
> My Trustee shall, at least quarterly each year commencing with the time of my death, pay from the income of the trust and, if necessary, from the principal thereof, ... in equal parts to my son, George Edward Todd, and my present pastor, Reverend Oliver Tedder, so long as each shall live. If my son, George Edward Todd, should predecease me or should survive me and predecease my present pastor, Reverend Oliver Tedder, then from and after my death, or from and after the death of my son, George Edward Todd, whichever event shall happen last, said Reverend Oliver Tedder shall receive all the quarterly payments hereunder each year so long as he shall live. If my present pastor, Reverend Oliver Tedder, should predecease me, or survive me and predecease my son, George Edward Todd, then from and after my death, or from and after the death of Reverend Oliver Tedder, whichever event shall happen last, George Edward Todd shall receive all the quarterly payments hereunder each year so long as he shall live.
> . . . .
> VI.
> Upon the death of the survivor of my son, George Edward Todd, and my present pastor, Reverend Oliver Tedder, said trust shall terminate, and all the property in the trust fund, including principal and accrued income, shall be paid over and distributed to the West Virginia Baptist Convention[.]

8. Paragraph Two of Mrs. Todd's 1977 will stated:

> I give and bequeath to my daughter, Pearl Todd Miller, the sum of Twenty–Five Thousand Dollars ($25,000.00), provided she shall survive me. If my daughter shall have predeceased me, I direct that said sum of Twenty–Five Thousand Dollars ($25,000.00) be added to, held, administered and distributed as part of my residuary estate.

That will left to the appellee all household furnishings, personal clothing, farm equipment and a life estate in certain real property. The remainder of the estate was to be held in trust for the ultimate benefit of the West Virginia Baptist Convention.

As indicated above, the August 22, 1986 will, which left the appellant $25,000 and the remainder of the estate to the appellee, was admitted to probate on June 24, 1990. On July 24, 1991, the appellant filed a three-count complaint in the Circuit Court of Raleigh County, alleging, in count one, that the appellee "coerced, tricked, induced, and/or unduly influenced" Mrs. Todd,[9] their mother, into executing the 1986 will and that, at the time the 1986 will was executed, Mrs. Todd was of unsound mind [10] and, therefore, lacked testamentary capacity.[11] In count two, the appellant alleged that the appellee, who had previously been granted Mrs. Todd's power of attorney, breached his fiduciary duty to her by purchasing certain real estate with funds belonging to Mrs. Todd. This real estate was held by the appellee and Mrs. Todd as joint tenants with the right of survivorship thus passing directly to the appellee upon Mrs. Todd's death without becoming part of Mrs. Todd's estate. Finally, the appellant alleged, in count three, that, prior to Mrs. Todd's death, Mrs. Todd held or owned certain assets [12] jointly with the appellee and that the appellee acquired an interest in these assets through the exercise of his power of attorney or through coercion, trickery and the exertion of undue influence upon Mrs. Todd, all in breach of his fiduciary duty to her.[13]

The appellant subsequently asked that the circuit court, *inter alia,* set aside and declare null and void the 1986 will and that Mrs. Todd be declared to have died intestate, leaving the appellant and the appellee as her only heirs at law and the only distributees of her estate.[14]

A hearing on the appellee's motion for summary judgment was held in the Circuit Court of Raleigh County, on November 20, 1991. Upon consideration of the four wills executed by Mrs. Todd as well as Mr. Ragland's affidavit and the briefs and argument of counsel, the trial judge granted the appellee's motion for summary judgment, without prejudice, on count one of the appellant's complaint, granting the appellant the right to amend her complaint. The trial judge further concluded that, by granting summary judgment on count one of appellant's complaint, counts two and three were, therefore, rendered moot. Thus, counts two and three were dismissed without prejudice to the right of the appellant to amend.[15]

9. Mrs. Todd had been bedridden since 1980 and apparently suffered from delusions and hallucinations.

10. Mr. Ragland states in his affidavit that Mrs. Todd was "fully competent" at the time she executed both the 1984 and 1986 wills.

11. *W.Va.Code,* 41–1–1 [1923] provides:

Every person not prohibited by the following section [§ 41–1–2] may, by will, dispose of any estate to which he shall be entitled at his death, and which, if not so disposed of, would devolve upon his heirs, personal representative, or next of kin. The power hereby given shall extend to any estate, right, or interest, to which the testator may be entitled at his death, notwithstanding he may become so entitled after the execution of the will.

*W.Va.Code,* 41–1–2 [1957] provides: "No person of unsound mind, or under the age of eighteen years, shall be capable of making a will."

12. These assets are identified as bank accounts, money market accounts and certificates of deposits at various banks located in Raleigh County, West Virginia and the MST West Virginia Bond Fund.

13. In discovery depositions of the appellee and his wife, Wilda Todd, it was revealed that a number of checks for large sums of money were written and signed by the appellee on a joint checking account held by him and his mother, from 1983 until her death in 1990.

14. The appellant further asked that all real and personal property which passed to the appellee under the terms of Mrs. Todd's 1986 will and which was owned jointly by Mrs. Todd and the appellee be turned over to a receiver for a proper and legal distribution thereof.

15. On February 3, 1992, the appellant filed an amended complaint in which she alleged, in addition to the allegations contained in the original complaint, that Mrs. Todd was coerced, tricked, induced and/or influenced by the appellee into making the July 30, 1984 will. On May 29, 1992, the appellant filed a motion to file a second amended complaint to bring in as a party plaintiff the West Virginia Baptist Convention and

## II

The facts of this case are unique. The wills executed by Mrs. Todd in 1986, 1984 and 1977 each bequeath to the appellant the sum of $25,000, and nothing more. It is the appellant's contention that Mrs. Todd executed both the 1986 and 1984 wills while of unsound mind and as a result of coercion and trickery on the part of her son, the appellee. However, at the November 21, 1991 hearing, the appellant specifically stated that Mrs. Todd did have the testamentary capacity to execute the 1977 will and, further, was not unduly influenced into executing it.

As this Court has previously stated, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty and Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, any doubt as to the existence of a genuine issue of fact must be resolved against the moving party, who must affirmatively show that the nonmoving party cannot prevail under any circumstances. *Id.* at 171, 133 S.E.2d at 777.

The trial court determined that even if the 1986 will, which bequeathed to the appellant $25,000, were deemed null and void, due to Mrs. Todd's lack of testamentary capacity and/or the appellee's undue influence over her, then the 1984 will would be offered for probate, still leaving the appellant $25,000. Were the trial court to declare the 1984 will null and void as well, the appellant would receive $25,000 under the 1977 will, the validity of which the appellant does not question. Under either the 1986, 1984 or 1977 will, the appellant would receive no more than $25,000 from her mother's estate. We must conclude, therefore, that the trial court did not err in granting the appellee's motion for summary judgment.

Furthermore, the existence of the revocation clause in the 1986 will cannot serve to revoke a prior will if the 1986 will is deemed invalid as a result of Mrs. Todd's lack of testamentary capacity. If Mrs. Todd lacked the requisite testamentary capacity to execute the 1986 will, then it follows that she also lacked the "intent to revoke" as required by *W.Va.Code*, 41–1–7 [1923].[16] The 1986 will cannot be relied upon as a revocation of prior wills because if that will is invalid, then so is the revocation language contained therein. Syl. pt. 2, *Dower v. Seeds*, 28 W.Va. 113 (1886).[17]

## III

In granting the appellee's motion for summary judgment, the trial court apparently applied the doctrine of dependent relevant revocation.[18] As indicated above, that doc-

---

several named trustees. By order of June 10, 1993, the trial court denied the appellant's motion for leave to file a second amended complaint and dismissed, with prejudice, the appellant's amended complaint of February 3, 1992.

**16.** *See* n. 1, *supra.* *See generally* 95 C.J.S. *Wills* § 264 (1957).

**17.** As the Supreme Court of Appeals of Virginia so logically reasoned: "[A] revoking clause in a will is a part and parcel of the will itself, without independent and immediate life or power, and that it survives or perishes with the will." *Timberlake v. State–Planters Bank of Commerce & Trusts*, 201 Va. 950, 115 S.E.2d 39, 44 (Va.1960), citing *Barksdale v. Barksdale*, 12 Leigh 535, 39 Va. 535 (1842).

**18.** The doctrine of dependent relevant revocation, recognized in syllabus point 3 of *Nelson v. Ratliffe*, 137 W.Va. 27, 69 S.E.2d 217 (1952) provides:

If a testator obliterates, deletes, or cancels a will, having a present intent to make a new will as a substitute for the old, and the new will is not made, it is presumed that the testator preferred the old will to an intestacy and the first will be given effect.

In the body of *Nelson*, however, the Court, quoting authorities from other jurisdictions and texts, adds that if a new will is made and the new will " 'fails of effect for some reason, it will be presumed that the testator preferred the old will to an intestacy, and this testament will be given effect.' " *Id.* at 35–36, 69 S.E.2d at 222 (citations omitted).

We disagree with the appellant's contention that the doctrine of dependent relevant revocation is not recognized in this jurisdiction. While in the case of *In re Estate of Siler*, 155 W.Va. 743, 754–55, 187 S.E.2d 606, 615 (1972), Justice Carrigan expressed his personal disdain for that doctrine, the majority of this Court did not find it to be invalid.

trine is not necessary to the resolution of this case.

 This Court stated in syllabus point 2 of *McAllister v. McAllister,* 166 W.Va. 569, 276 S.E.2d 321 (1981):

'[I]t is not the reasons assigned upon which the [lower] court decided a question that is to be reviewed, but the action of the court itself; and the question always in the appellate court is, whether the judgment to be reviewed is correct.' Syl. pt. 5, *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730 (1964), in part.

Regardless of the reasons of the trial judge in granting summary judgment, we believe his judgment is correct.[19]

For the reasons stated above, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

---

**19.** The appellant also argues that the trial court erred in determining that the appellant does not have standing to contest her mother's will(s). We find nothing in the record indicating that the trial court made such a determination. We, therefore, will not address that assignment of error. Furthermore, the resolution of this case would not turn on that issue.