PHILLIPS & BENJAMIN CO., Inc. v. RATNER et al.

No. 284, Docket 22737.

United States Court of Appeals
Second Circuit.

Argued June 4, 1953.

Decided Aug. 7, 1953.

Adolph Lund, New York City (Klein & Weir, William Klein, and Milton R. Weir, New York City, and Sidney R. Zatz, Chicago, Ill., on the brief), for defendants-appellants.

Arthur H. Goldberg, New York City (Port, Samet & Goldberg and Charles S. Port, all of New York City, on the brief), for plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal, in its major aspects, is from a judgment entered upon a jury verdict awarding plaintiff, The Phillips & Benjamin Co., $38,900.35 for commissions claimed to be due it under a sales agency agreement with one of the defendants, Lee Ratner, doing business as Junex Products, together with interest of $1,633.81 and costs of $262.20. Suit was originally commenced in the New York State Supreme Court and was removed to the court below on the basis of the diverse citizenship of plaintiff and the three defendants—all partners in the Junex Products enterprise. The claim in litigation stems from a written contract dated January 21, 1952, by which Ratner engaged plaintiff as exclusive sales representative for his firm's reducing tablet, Junex, in a territory comprising New York State (except the counties of Niagara, Erie, Chautauqua, and Cattaraugus), New Jersey, Maryland, Delaware, the District of Columbia and the adjacent counties of Virginia, and the eastern half of Pennsylvania. In this contract, plaintiff undertook "to actively and aggressively push the sale" of Junex and, somewhat more specifically, "to thoroughly cover his territory with senior salesmen contacting large volume accounts, and detail salesmen contacting independent retail outlets, who in turn will display merchandise, see that Junex Products' advertising materials are used to attract consumers and detail Junex Products through wholesalers in his territory." Compensation for these services was fixed at a commission of 10 per cent on net sales, payable on the 15th day of the month following shipment of the merchandise. The agreement was to expire on December 31, 1952, subject to earlier termination by either party on 30 days' notice or without such notice in case of violation of any part of the agreement.

Defendants availed themselves of this privilege of termination less than three

months after the contract was executed; on April 3, they wrote plaintiff cancelling the agreement in so far as it applied to sales through department stores, and a further notice terminating the entire agreement was sent on April 5. Each of these letters gave plaintiff the agreed-upon 30 days' notice and stated that the regular commission would be paid on sales consummated during this period. The total commissions earned by plaintiff from the beginning of its agency for Junex until May 7, 30 days after receipt of the second notice, amounted to $44,534.78. Of this sum, defendants remitted only $375. There thus remained a balance, after deducting certain additional credits which need not now be detailed, of $38,900.35, which plaintiff sought to recover in this suit and which the jury awarded it in the court below.

It is defendants' position on this appeal that their motion to dismiss should have been granted and that plaintiff's claim should thus never have reached the jury because plaintiff failed as a matter of law to establish full performance of its contractual obligations. Those obligations, defendants assert, derive not only from the original contract, but also from "oral conversations and writings" which are claimed to supplement it. The item chiefly relied upon as specifying plaintiff's duties is a long letter written on January 31, 1952, by Frank L. Anderson, plaintiff's president, to Eugene Jeral, vice-president of Junex Products. Discussing various details of the Junex promotion program plaintiff was about to undertake, Anderson wrote, under the heading "Concentration Every Drug Company":

"On Monday morning, February 25th, we want to start a crew in addition to our regular men, to call on every single drug store in Greater New York City at which time, we will put up two streamers and, if possible, two cards in every drug store. We will deliver, to each drug store, one box of Junex Free. * * *

"We want a crew doing this job of not less than 12 men who will make from 20 calls each a day or a total of 240 calls per day, or 1200 calls per week. We will have finished New York on this basis by March 29th. This means that every drug store in Greater New York will have Junex in stock in quantities from 1/6 dozen up to 3 dozen. Every drug store in New York will have signs up, tying in to your television show and the newspaper advertising."

If, as defendants assert, this letter "clearly expressed what was expected and what was required of" plaintiff under the contract, there was indeed no full performance, since plaintiff admittedly did not "finish" New York's 5,500 retail drugstores by March 29. But plaintiff counters that the quoted statements were only an approximation of what it hoped to accomplish and in no way an expression or admission of its contractual commitment. To establish its performance of the original agreement, it presented evidence at the trial showing that its selling staff had been increased from 12 to 26 to handle this "stupendous job," and that this staff had contacted a large number of New York's retail druggists in addition to numerous wholesale druggists, drug chains, and department stores in that city and other parts of its territory.

■ Whether the January 31 letter formed part of the contract was clearly a question for the jury to decide. Union Trust Co. of N. Y. v. Whiton, 97 N.Y. 172, 178; see also Shoenthal v. Bernstein, 276 App.Div. 200, 204, 93 N.Y.S.2d 187, 191. Hence there was no error in the district court's denial of defendants' motion to dismiss. And, assuming that the jury rejected defendants' contention and held plaintiff simply to its promise "to actively and aggressively push the sale" of Junex, the evidence of plaintiff's activities was sufficient to establish full performance.

■ Defendants' claim that plaintiff forfeited its right to recovery because of various acts of disloyalty was also properly submitted to the jury. We find it unnecessary to detail these charges here. Suffice it to say that plaintiff offered plausible explanations for each of the purported "instances of bad faith," showing that in each

case it acted with the approval of one of defendants' agents and not for its own gain. The evidence certainly would not have justified dismissal of plaintiff's claim as a matter of law, and the loyalty issue was submitted to the jury on the basis of a complete and accurate charge as to the applicable law.

While defendants do not challenge this portion of the charge, they do claim to find reversible error in the district court's instructions on the issue of plaintiff's performance. Specifically, they contend that the court improperly charged the jury that plaintiff could recover in full even if it only substantially performed its contract obligations. The alleged error appears in the following section of the charge:

"If you find the plaintiff, within the contemplation of the parties, fully performed its commitments under the contract, then it may recover, even though its representatives did not visit all the 5,500 stores, unless you find that the understanding of the parties was that the plaintiff was under a duty to have its men visit and make delivery of a free box of Junex to every druggist in the greater New York area by March 29, 1952, and to procure the placement of streamers and other advertising paraphernalia, as the defendants contend.

"If you do find that it was part of plaintiff's obligation to so visit all the drugstores, of course, it has the burden of proving that it duly performed this undertaking.

"If you find that the plaintiff substantially performed its commitments under the agreement of the parties and within their contemplation, then its right to recover is not forfeited or lost by reason of inadvertent or unimportant omissions."

Apart from the one reference to substantial performance in the last paragraph just quoted, the judge repeatedly charged the jury that plaintiff's right to recovery depended on full performance of its undertakings. And this single instruction could not in any event have prejudiced defendants. The jury's verdict leaves no doubt

that it did not find plaintiff contractually obligated to cover all of New York's retail stores by March 29, since the evidence showed that only about half the stores had been visited; and failure to cover the balance could not possibly have been considered an "inadvertent or unimportant" omission. So the jury must have held plaintiff simply to the original vague contract. And as applied to the obligations there set forth the doctrine of substantial performance is not only inappropriate but meaningless. Either plaintiff did "actively and aggressively push" Junex sales and "thoroughly cover" its territory or it did not. Such duties do not readily fit into categories of substantial or non-substantial performance; and the jury could not, as a practical matter, have been misled into applying a doctrine based upon substantial performance.

As a further ground for reversal, defendants contend that the court erred in excluding testimony their counsel sought to elicit from defense witness Max Burde, a partner in the Keystone Company, which was hired to succeed plaintiff as Junex representative for New York and part of New Jersey. Defense counsel attempt to show through this witness the extent of Junex distribution which Keystone salesmen found in their territory shortly after they began work on April 7, 1952. After some preliminary questioning, Burde was asked:

"On the basis of the daily reports filed by your salesmen and on the basis of the information which was telephoned in to you by your salesmen, can you state or do you have an opinion with respect to the amount of retail distribution of Junex in the area assigned to you?"

Plaintiff objected to this question on the ground of hearsay and raised similar objections to several further questions aimed at essentially the same information. In sustaining these objections, the court observed that "it would be the rankest hearsay to allow this witness to testify as to what the plaintiff's representatives did from the period of January 21, 1952, to April 3rd, the date of the first cancellation no-

tice, and to April 5th, the date of the second cancellation notice, of which he had no direct or personal information, and neither did any of his employees have any direct or personal information." We need not now consider the significance, if any, of the lapse of time between plaintiff's activities for Junex and the reports made by the Keystone salesmen—extensively discussed in both parties' briefs—since it is clear that Burde's testimony in any case would be inadmissible hearsay. The record shows no attempt to introduce the Keystone reports in evidence as records kept in the regular course of business. 28 U.S.C. § 1732(a); N. Y. Civil Practice Act § 374–a. Thus Burde would at best be testifying merely to the observations of others; and such hearsay testimony cannot be rendered admissible under the guise of soliciting the witness' "opinion" as to the facts which have been related to him.

█ Finally, defendants appeal from the district court's refusal to grant a directed verdict on their second counterclaim and from its dismissal of their fourth counterclaim. The former was for recovery of the reasonable value of the supply of Junex still held by plaintiff. In the latter, defendants sought damages of $655.61 allegedly sustained because plaintiff instructed its subsidiary, Reverie, Inc., not to pay defendants a balance of that amount due them.

As to the second counterclaim, the evidence shows that plaintiff had received instructions on April 9 "to deliver all Junex we had on hand" to a corporation designated by defendants. Plaintiff accordingly delivered the boxes of Junex then in its warehouse. But it subsequently recovered from its salesmen 570 additional boxes which it still holds. In a letter written on May 2, plaintiff voluntarily rendered to defendants a complete accounting of its supplies of Junex, reporting that it still had 570 boxes on hand. Since defendants never replied to this letter, plaintiff argues that there has been no demand for return of its Junex stock. Under these circumstances the district court properly submitted to the jury the question whether the requisite demand was actually ever made, and there

was thus no error in the court's denial of defendants' requests for a directed verdict.

█ The court did err, however, in dismissing the fourth counterclaim. This ruling was made on the grounds that the counterclaim did not allege a cause of action for inducing a breach of contract and that there had been no explanation why defendants did not pursue legal remedies available against Reverie, Inc. We disagree with the court's conclusion that the pleading did not adequately set forth a claim for inducing a breach of contract. Recovery is allowed on such a claim where one who knows of an existing valid contract intentionally and without reasonable justification induces one of the parties to the contract to breach it to the damage of the other party. Hornstein v. Podwitz, 254 N.Y. 443, 448, 173 N.E. 674, 84 A.L.R. 1; 6 Corbin on Contracts § 1470 (1951). Here defendants alleged (1) a contract debt owed by Reverie to defendants, (2) plaintiff's instruction to Reverie not to pay that debt, and (3) the resultant damages. Certainly these allegations qualify as "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P., rule 8(a) (2); Selby Mfg. Co. v. Grandahl, 2 Cir., 200 F.2d 932; Dioguardi v. Durning, 2 Cir., 139 F.2d 774. And there was no need for defendants to explain why they did not proceed directly against Reverie, as the court below suggests, since their contract claim against Reverie does not prevent them from having an additional claim in tort against plaintiff. Hornstein v. Podwitz, supra, 254 N.Y. at page 449, 173 N.E. 674.

█ Indeed there remain no issues of fact to be tried on this counterclaim. Reverie's debt to defendants and plaintiff's instruction not to pay are undisputed. Thus plaintiff can resist the counterclaim only on the ground that its acts were reasonably justified. The sole justification suggested by the record for plaintiff's retaining these funds in its subsidiary is as part payment on its commission claim against defendants. Were this sound it would mean piercing the corporate entity of the subsidiary so thoroughly that the Reverie debt should constitute a partial offset to the main claim.

We do not think the circumstances require a detailed exploring of these legal byways; suffice it to say that since plaintiff has now recovered its commissions in full it cannot justify keeping an additional amount on any theory of part payment. A setoff of $655.61 plus interest will therefore be allowed against the judgment entered in plaintiff's favor in the court below. No costs will be taxed on this appeal.

Judgment as entered upon the verdict affirmed; dismissal of the defendants' fourth counterclaim reversed and action remanded for entry of the modified judgment directed in the opinion.