CAROLINE T. OSBORN *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Worcester.  February 8, 1967. — March 31, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Insurance,* Life insurance: dividend, lapse.

In a life insurance policy with the premium payable annually in advance on the anniversary date, provisions under which the insurance company as of each December 31 determined the divisible surplus that would

accrue on the policy during the policy year beginning on the next anniversary date, February 16, and would be payable as a dividend at the end of that policy year on the following anniversary date, provided the premium for that policy year had been paid, were not in violation of G. L. c. 175, § 140, as amended through St. 1943, c. 227, § 12; and the dividend so payable at the end of a certain policy year was not to be included in the "dividend accumulations" within § 140, and the policy lapsed, where the insured died in May of that policy year without having paid the premium due at the beginning thereof or within the period of grace expiring on March 19 and the "dividend accumulations," excluding such dividend, were insufficient to pay the unpaid premium in full.

BILL IN EQUITY filed in the Superior Court on June 7, 1961.

The suit was heard by *O'Malley,* J.

*Sumner W. Elton* for the plaintiff.

*Francis H. George* for the defendant.

WILKINS, C.J.   The defendant, a New York corporation, issued a twenty-year term policy on the life of Laurence W. Osborn of Worcester in the amount of $10,000, effective February 16, 1940.   The premium of $131.70 was payable annually in advance on the anniversary date.   The policy was executed, issued, and delivered in Worcester.   The insured died on May 7, 1958, without having paid the premium due on February 16, 1958, or within the thirty-one day grace period expiring on March 19, 1958.   The plaintiff's brief concedes that on the latter date ''in strict accordance with its terms, the policy lapsed.''   This bill in equity is brought by the widow and chief beneficiary, who contends that the policy was still in effect on May 7, 1958.   The plaintiff appeals from a final decree dismissing the bill.

Findings of the trial judge are these.   On February 16, 1958, and March 19, 1958, the company had in its possession the amount of $67.80, representing a dividend which was ascertained and apportioned as of December 31, 1956, but which, according to paragraph 12 of the policy, was not payable until the anniversary date of February 16, 1958.   The company in June, 1958, mailed the plaintiff a check for $67.80 covering that dividend, but the plaintiff did not cash it and tendered it back to the company, which refused it.   A

dividend in the same amount of $67.80 was likewise ascertained and apportioned for the year 1957, which according to the terms of the policy was not due and payable until February 16, 1959, and then only if the current premium for the period from February 16, 1958, to February 16, 1959, had been paid. The phrase "for the year 1957" is ambiguous, but it is clear from the word "likewise," and we ourselves find from the reported evidence, that this dividend was likewise ascertained and apportioned as of December 31, 1957, but under the policy was not payable until February 16, 1959, and then only if the current premium for the period from February 16, 1958, to February 16, 1959, had been paid.

The judge concluded that the policy lapsed for nonpayment of premium on February 16, 1958, and that the period of grace expired on March 19, 1958. He "found" that the only funds then in the hands of the company and due the insured without condition or contingency were the dividend of $67.80 payable on February 16, 1958; and that at the expiration of the grace period the company did not have funds absolutely owing and due the insured in sufficient amount to pay the premium in full for the period from February 16, 1958, to February 16, 1959. See *Simmons* v. *Cambridge Sav. Bank,* 346 Mass. 327.

The policy in paragraph 12, entitled "Participation in Divisible Surplus," provides in part: "This Policy is a participating contract and the Company will annually, as of the thirty-first day of December of each year, ascertain and apportion any divisible surplus accruing thereon . . . . Such divisible surplus will be apportioned for payment as a dividend on the anniversary of the date of issue of this Policy following the next succeeding thirtieth day of April,[1] on the condition that all premium payments due for the policy year ending at such anniversary shall have been made."

The plaintiff attacks this provision in paragraph 12 as a

---

[1] The anniversary of the date of issue of the policy following the next succeeding April 30 is February 16, 1959.

violation of G. L. c. 175, § 140 (as amended through St. 1943, c. 227, § 12),[1] in its form on February 16, 1958.[2]

The grounds of the alleged violation of § 140 asserted by the plaintiff are that paragraph 12 (1) "deferred payment of the annual dividend until nearly fourteen months after its date of ascertainment"; and (2) "made such payment contingent upon the payment of a further premium." Stated in greater detail, the plaintiff argues that the two dividends of $67.80 were more than enough to pay the premium of $131.70 due on February 16, 1958; and that the second dividend "was for the year 1957, had been ascertained . . . presumably sometime early in 1958 . . . as of December 31, 1957, but under paragraph 12 of the policy was not payable until February 16, 1959, and then only if the premium due on February 16, 1958, had been paid."

The plaintiff's position in the lower court, as summarized in the trial judge's findings, was somewhat different. There it was contended that the amount to be added to the first dividend was $90.80. This, however, did not represent a determined and apportioned dividend, but included an amount for contingency reserves covering this class of pol-

---

[1] The material portions of § 140, as so amended were: "Except as provided in this section, every domestic life company . . . shall provide in every policy of life or endowment insurance hereafter issued that the proportion of the divisible surplus of the company contributed by said policy shall be ascertained and distributed annually, and not otherwise, except as hereinafter provided, beginning not later than the end of the third policy year; but such distribution shall not be made contingent upon the payment of any further premium except that if dividends are allowed on an anniversary of the policy preceding the third, such dividends may be made subject to the payment of the succeeding year's premium. Every such company shall on December thirty-first of each year or as soon thereafter as practicable, after providing for the reserve required by sections nine and eleven and for all other liabilities, including . . . such sum as may be held on account of existing deferred dividend policies, and providing also for a contingency reserve not in excess of the limit prescribed in the following section, apportion its remaining funds upon the contribution to surplus plan, as dividends, to all other policies entitled to share therein. . . . [A]nd if any premium on the policy is not paid at the expiration of the days of grace, the company shall keep the policy in force by applying the dividend accumulations to the payment due on the policy if such accumulations are sufficient to make said payment in full . . . . A foreign life company which does not provide in every participating policy hereafter issued or delivered in the commonwealth that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise . . . shall not be permitted to do new business within the commonwealth."

[2] Section 140, first paragraph, was later amended. St. 1960, c. 568, § 1. St. 1963, c. 211.

icy. It was, nevertheless, subject to the same conditions as the smaller second dividend presently contended for in this court, that is, it would not be payable until the anniversary date of February 16, 1959, and then "only if the current annual premium had been paid." The contention that reserves should be invaded was unsound. It advocated unsafe and illegal practices (cf. G. L. c. 175, § 9), and, not being argued to us, has been abandoned sub silentio. See *Home Life Ins. Co.* v. *Stephens,* 190 Ark. 1018, 1024–1025; *Lubin* v. *Equitable Life Assur. Soc.* 326 Ill. App. 358, 362–364, 375.

The company contends that New York, and not Massachusetts, law applies, and relies with good ground on definitions of domestic and foreign companies in G. L. c. 175, § 1.[1]

We prefer, however, to rest our opinion on the assumption that if Massachusetts law did apply, the policy nevertheless would not be in violation. Because the plaintiff's position in the court below has been shifted in this court, as above noted, the trial judge's findings are not completely applicable. Hence we must make further findings on the reported evidence and rulings on questions which the trial judge did not need to make. We make our findings on the testimony of Allan Lebourveau, associate actuary for the company, called by the plaintiff, and the only witness to testify on the subject.

The company did not ascertain and apportion divisible surplus on this policy from the 1957 calendar year earnings. On the contrary, the ascertainment was as of December 31, 1957, and related prospectively to the premium due for the policy year February 16, 1958, to February 16, 1959. Ascertainment is a mathematical calculation. Apportionment is an action by the board of directors after the numerical

---

[1] The company in its brief argues that it is subject to § 216 of the New York Insurance Law, which requires it to "ascertain and distribute annually, and not otherwise" its divisible surplus, and that the apportionment of divisible surplus shall not "be made contingent upon the payment of the whole or any part of the premium for any subsequent policy year." It contends that § 216 in these respects is identical with G. L. c. 175, § 140. We need not extend this opinion to discuss this point.

calculations have been ascertained. As of December 31 of each year from 1941 to 1957, inclusive, the company ascertained and apportioned the divisible surplus accruing on the policy for payment as a dividend on the anniversary of the date of issue of the policy, following the next succeeding thirtieth day of April, on the condition that all premium payments due for the policy year ending at such anniversary should be made.[1] In paragraph 12 the phrase "annually, as of the thirty-first day of December of each year" has the purpose to prescribe an annual procedure. For this purpose December 31 is a convenient date. Paragraph 12 requires that as of the thirty-first day of December the company must ascertain and apportion any divisible surplus accruing on all of its classes of policies, not merely the policy in suit. In order that the company at the end of each policy year may return to the individual policyholder any part of the premium that has proved not to be needed, the company makes an ascertainment of the divisible surplus on all the various classes of policies for the policy year ending at the date the dividend is payable. This is the only method by which the company can distribute to the policyholders their entire share of the divisible surplus. To summarize, as applied to this policy, as of December 31 of each year, the company ascertained and apportioned the divisible surplus which would accrue on this policy during the policy year beginning a month and one half later on February 16 and ending thirteen and one-half months later on the following February 16.

The dividend apportioned as of December 31, 1957, was not made contingent upon the payment of "future premiums," as prohibited by § 140, but upon the payment of the premium upon which the dividend was to be based.

*Decree affirmed.*

---

[1] No divisible surplus accrued on this policy prior to the end of the policy year ending at its policy anniversary in 1943.