BERTHA CARTER vs. EMPIRE MUTUAL INSURANCE COMPANY and others.[1]

Worcester.     November 12, 1976. — March 23, 1978.

Present: HALE, C.J., KEVILLE, GOODMAN, ARMSTRONG, & BROWN, JJ.

*Insurance,* Agent, Motor vehicle liability insurance, Cancellation. *Agency,* What constitutes. *Unlawful Interference. Damages,* Storage fees, Towing charge. *Truth-in-Lending Act.*

The purported cancellation of a policy of automobile insurance was without effect, where an insurance agent had improperly diverted a sum from the insured's initial payment under a premium financing arrangement which, if applied to the premium, would have been sufficient to forestall the insured's default, several months later, on an installment note for the balance of the premium [117-120]; nor could a finance company to which the note was negotiated properly exercise the insured's power of attorney to effect cancellation of the policy in the event of default, in view of the judge's uncontested finding that the insurance agent had acted as the finance company's agent for the purpose of collecting the initial payment [121-122]. ARMSTRONG, J., with whom HALE, C.J., joined, concurring in part and dissenting in part.

---

[1] Main Street Insurance Agency, Inc., and Colony Finance Corp.

Claims against an insurance agent and a finance company for damages arising from the actions of each in causing an insurance company wrongfully to repudiate the plaintiff's policy of insurance were properly joined with the plaintiff's claim on her policy against the insurance company; all three defendants were liable for the benefits under the insurance policy of which they wrongfully deprived the plaintiff. [123] ARMSTRONG, J., with whom HALE, C.J., joined, dissenting in part.

A finding of damages for the towing and storage of an automobile, which was not based on the evidence, could not stand; nor, on the record, could the finding be sustained on an assumption, which the court did not make, that these services were of such an ordinary nature that the judge could find their value on the basis of his general knowledge and experience. [124-125]

Failure of an insurance agent to insert the "date of first payment," the "deferred payment price," and the date the "finance charge will begin to accrue" in the spaces provided therefor on an insurance premium financing agreement before its signature by the plaintiff constituted violations of G. L. c. 140C, the Truth-in-Lending Act, entitling the plaintiff to statutory damages, notwithstanding contemporaneous oral disclosure and subsequent entry of the missing information in writing [125-129]; where the record did not reveal a timely demand for relief the plaintiff could not recover treble damages under G. L. c. 93A, § 9 (3) [129-130]. ARMSTRONG, J., with whom HALE, C.J., joined, concurring in part and dissenting in part.

CIVIL ACTION commenced in the Superior Court on January 31, 1975.

The case was heard by *Meagher*, J.

The case was submitted on briefs.

*David B. Cohen* & *Sanford A. Kowal* for Colony Finance Corp. & another.

*Franklin P. Anastas* for Empire Mutual Insurance Co.

*Stephen A. McNerney* for Bertha Carter.

GOODMAN, J. These cross appeals arise out of the purchase by the plaintiff of a motor vehicle liability insurance policy issued by Empire Mutual Insurance Company (Empire) for the year 1974; the policy included coverage for damage to the plaintiff's automobile. The plaintiff paid part of the total premium in cash and financed the balance through a premium finance agreement (G. L. c. 255C, § 1, definition 4) with Main Street Insurance

Agency, Inc. (Main), Empire's agent. The agreement, dated January 3, 1974, included a promissory note signed by the plaintiff payable to Main in monthly installments; Main assigned the agreement to Colony Finance Corp. (Colony). In her complaint the plaintiff alleged that the premium finance agreement did not meet the disclosure requirements of G. L. c. 140C and G. L. c. 255C and sought to have the three defendants subjected to the penalty prescribed by G. L. c. 140C, § 10(b). The plaintiff also claimed that a notice of cancellation of her policy sent by Colony to Empire was ineffective to permit Empire to cancel the policy and that she was therefore entitled to recover from the defendants her losses arising from an automobile accident in which she was involved on June 29, 1974, five days after the notice of cancellation purported to become effective.

The judge filed findings of fact and an order for judgment pursuant to Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), and on the same day entered a judgment declaring that the cancellation of the plaintiff's policy was void and that the policy was in full force and effect on the date of the accident. The judgment further provided that the plaintiff recover from the defendants jointly and severally her losses arising from the automobile accident. The judge's findings of fact were silent on the question whether the premium finance agreement met the disclosure requirements of G. L. c. 140C and G. L. c. 255C, and the judgment was likewise silent as to the penalty prescribed by G. L. c. 140C, § 10(b). The plaintiff filed a motion under Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974), that the judge find that the premium finance agreement did not meet the disclosure requirements of G. L. c. 255C and as a result also violated G. L. c. 140C and G. L. c. 93A[2] and that the judgment be amended accordingly so as to award the plaintiff the minimum $100 penalty (and attorney's fees

---

[2] The plaintiff's complaint raised no question as to a violation of G. L. c. 93A.

and costs) prescribed by G. L. c. 140C, § 10(*b*), together with a trebling pursuant to G. L. c. 93A, § 9(3), of the damages already awarded the plaintiff for her losses in the accident. The motion also sought interest on all the damages. The motion was denied. Within the time provided by Mass.R.A.P. 4, 365 Mass. 846 (1974), for appeal from the judgment, all parties filed notices of appeal.[3]

## The Defendants' Appeals

1. *The validity of the cancellation.* We summarize certain facts which are not in question. The premium for the 1974 motor vehicle liability insurance policy which the plaintiff purchased through Main was $294.80. On December 31, 1973, the plaintiff paid Main $50, and on January 3, 1974, she paid Main an additional $58.80. On the latter date the plaintiff signed a note which provided that she pay Main $247.52. Although the plaintiff had paid Main a total of $108.80, the face of the note indicated

---

[3] We treat these appeals as appeals from the judgment although the defendants' appeals are stated to be from the "findings and conclusions of law" (see *Foman* v. *Davis*, 371 U.S. 178, 181 [1962]; and 9 Moore's Federal Practice par. 203.18 [2d ed. 1975]) and the plaintiff's appeal is from the denial of her motion for additional findings of fact and for an amendment of the judgment (see *State Farm Mut. Auto. Ins. Co.* v. *Palmer*, 350 U.S. 944 [1956], reversing 225 F.2d 876, 877–878 [1955]; *Ginsburg* v. *Ginsburg*, 276 F.2d 94, 95 [9th Cir. 1960], cert. denied, 364 U.S. 934 [1961]; *Wyse* v. *Pioneer-Cafeteria Feeds, Ltd.*, 340 F.2d 719, 725 [6th Cir. 1965]; and Annot., 2 A.L.R. Fed. 545, 552–557 [1969]). The plaintiff and the defendants have briefed the case as if both sides had appealed from the judgment and neither the plaintiff nor any of the defendants has attempted to show that the inaccuracy of the others' notices of appeal has in any way been misleading. See *Altvater* v. *Battocletti*, 300 F.2d 156, 158 (4th Cir. 1962); *Peabody Coal Co.* v. *United Mine Workers*, 484 F.2d 78, 81 (6th Cir. 1973). Our treatment of the plaintiff's appeal as being from the final judgment makes immaterial her motion for additional findings and to amend the judgment and her appeal from the denial of that motion. See 13 Eickhoff and Farrell, Cyclopedia of Federal Procedure § 57.61 (3d ed., rev. vol. 1977). Our cases of *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket*, 5 Mass. App. Ct. 206, 207–208 (1977) and *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893 (1977), are not to the contrary since no judgments were entered in those cases.

that Main had received a cash down payment of $73.80 on the premium and that the $247.52 amount of the note represented a $221 unpaid balance on the premium, a $1 credit for life insurance, and a $25.52 finance charge.[4] By the terms of the note the plaintiff was to pay the $247.52 in eight monthly payments of $30.94. The note contained a power of attorney allowing its holder to "perform all acts necessary or appropriate to effect cancellation" of the plaintiff's insurance policy.

Main assigned the note to Colony, and Colony transmitted $294.80 to Main which then sent the $294.80 to Empire in payment of the premium. Main transmitted to Colony $73.80 of the $108.80 which the plaintiff had paid Main on December 31 and January 3, and applied the remaining $35 from the plaintiff's $108.80 payment to the purchase of an automobile club membership in the plaintiff's name.

The plaintiff mailed payments of $30 to Colony on February 28, March 21, and April 25. Colony received these payments on March 4, March 25, and April 29, respectively. By June 3 Colony had received no further payments from the plaintiff, and, the plaintiff being in arrears, Colony sent her, by registered mail, notice that it was cancelling her policy effective June 24, 1974, because of "default of payment on premium finance contract." This notice was returned to Colony unopened, and the plaintiff claims never to have received it. On June 11 Colony received from the plaintiff a money order for $30 dated May 21. On the same day Colony sent the plaintiff a letter stating that it was in receipt of her payment and adding, "However, in order to reinstate your insurance, which will be cancelled effective June 24, we must receive $42.86 which includes late charges and a $2.00 reinstatement fee, before June 20. No personal checks will be accepted." The plaintiff received this letter on June 13.

---

[4] These amounts were all entered on the note when the plaintiff signed it.

As a result of a telephone conversation with an employee of Colony, the plaintiff, on June 23, sent Colony $30.94 which Colony received on June 28 and accepted.

On June 29, while passing through Georgia on a trip to Alabama, the plaintiff was involved in an automobile accident. On July 1, the plaintiff sent Colony a further payment of $40; but this payment was not accepted. Empire, on June 25, received notification from Colony that the plaintiff's policy was to be cancelled effective June 24. Empire processed the cancellation in early July. It has since refused the plaintiff's claim under the policy for her loss in the accident on the ground that the policy had been cancelled when it happened.

The judge found that Main had improperly applied $35 of the $108.80 which the plaintiff had paid to Main on December 31, 1973, and January 3, 1974, to the purchase of an automobile club membership in the plaintiff's name. The judge found that the plaintiff had not agreed to purchase such a membership and "was unaware of such motor club enrollment and thought that the $108.[80] she had paid Main Street Insurance Agency, Inc. was to be put toward her 1974 car insurance premium." He further found that if Main had done so instead of diverting $35 to a motor club membership, the plaintiff's premium payments, including those which Colony received on June 11 and 28, would have carried the policy into July. He concluded that Main "is responsible for any loss incurred by the plaintiff and that Colony and Empire held out Main . . . as their agent to collect monies due and to apply them properly towards insurance coverage and to forward the premium payments to them, and that they are legally obligated for any losses incurred by the plaintiff which are covered risks under the policy issued by Empire." There was no error.

There was sufficient evidence to support the judge's finding (see Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]) that Main had, without authority, diverted $35 of the $108.80, intended as premium, to the purchase of a motor

club membership in the plaintiff's name:—The plaintiff had, through Main, insured her automobile for the year 1973 with the Hanover Insurance Company; simultaneously she had purchased through Main membership in an automobile club for 1973. Late in 1973 Main sent the plaintiff a "Final Notice Before Cancellation" to complete and return to Main an enclosed application for the renewal of her motor vehicle insurance policy for the year 1974. The instructions for completing the renewal form stated, "Unless otherwise requested, your insurance will be renewed on the same basis as in 1973." The plaintiff visited Main's office on December 31, 1973, and January 3, 1974, in order to arrange for insurance. She intended that the full $108.80 which she paid to Main on those dates be applied to the payment of her premium. No one at Main's office said anything to her concerning the purchase of an automobile club membership in her name and she made no application therefor.[5]

The defendants are not aided by the language quoted above in the instructions to the insurance renewal form, on which they rely. As the judge correctly pointed out, the language in the instructions refers only to the renewal of insurance, not to the renewal of an automobile club membership. And, in any event, the plaintiff apparently did not merely return the enclosed forms as contemplated by the instructions but personally went to Main's office, where she bought new insurance instead of renewing her insurance on the same basis as in 1974. As the judge points out, "The plaintiff's insurance on her car changed substantially in 1974 from that of 1973 in that she was insured with a different insurance company and there was also a change in her deductible amount under Coverage C, Division 2, Damage to Insured Motor Vehicle." (It was reduced from $100 to $50.)

---

[5] Indeed, the record appendix contains a representation by the plaintiff's counsel that at that time the plaintiff was a member of "Triple A."

Since the diversion of the $35 payment by Main was unauthorized, Main's duty was to apply that sum to the premium. In view of the judge's uncontested finding that Main was Colony's agent (see *Bousquet* v. *Commonwealth*, 374 Mass. 824, 825 [1978]), that duty is likewise imposed on Colony. See *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.*, 4 Mass. App. Ct. 172, 180–181 (1976), *S.C.* 373 Mass. 594 (1977). Colony, like Main and Empire, is implicated in the process of selling insurance to the public, see *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.*, 4 Mass. App. Ct. at 179–180; and while we have found no cases exactly like this one, Colony's duty seems to us to be commensurate with the duty generally of an insurance company to apply overpayments, which it or its agent holds, to avoid forfeiture of a policy. *American Nat. Ins. Co.* v. *Yee Lim Shee*, 104 F.2d 688 (9th Cir.), cert. denied, 308 U.S. 592 (1939). *Clifford* v. *Catholic Mut. Benefit Ass'n.*, 208 Mich. 448, 450–451 (1919). *National Aid Life Assn.* v. *Partlow*, 178 Okla. 156, 157–158 (1936). 15 Appleman, Insurance Law and Practice § 8275 (1944). Cf. *Hollister* v. *Quincy Mut. Fire Ins. Co.*, 118 Mass. 478, 481 (1875); *Simmons* v. *Cambridge Sav. Bank*, 346 Mass. 327, 331–332 (1963); *Osborn* v. *Metropolitan Life Ins. Co.*, 352 Mass. 278, 280 (1967). See *Chickering* v. *Globe Mut. Life Ins. Co.*, 116 Mass. 321 (1874). As these authorities teach us, had Main held the note and collected the payments, neither it nor Empire could have effectively cancelled the policy for nonpayment of premiums if the application of the $35 payment diverted from premium would have been sufficient to avoid default. Similarly, Colony, to whom the note was negotiated and who collected the payments, ought not to be able to exercise its power of attorney to cancel the policy if its agent (here Main), in arranging for the financing and collecting the down payment owed the insured an amount intended as payment of premium and sufficient to prevent default on the note

and thus to preclude forfeiture of the policy.[6]

In the present case the $35 diverted from the plaintiff's premium payment was sufficient to prevent default on the note. The defendants do not attack the trial judge's finding that after the plaintiff received Colony's June 11 letter, which stated that her policy would be cancelled unless she paid Colony $42.86 before June 20, the plaintiff telephoned Colony and received an extension of time within which to make the payment; nor do the defendants attack the judge's at least implicit finding that the plaintiff's June 28 payment of $30.94 was received before the expiration of that extension. The $35 unapplied premium payment was more than sufficient to cover the $11.92 by which the plaintiff's June 28 payment ($30.94) was short of the $42.86 which Colony's letter requested be paid.[7] We therefore conclude that the judge correctly ruled that the policy was improperly cancelled and was in full force and effect on the date of the plaintiff's accident.[8]

---

[6] Our analysis makes immaterial and we do not decide the defendants' contentions with reference to the exact application of the diverted sum, which they argue could not be applied either to the down payment or the first installment.

[7] Of this $11.92, $8.16 is accounted for by various charges Colony made to the plaintiff as a result of her lateness in making the preceeding four payments. As the plaintiff raises no question concerning these late charges, and as they have no effect upon our decision as to the correctness of the judge's ruling that the cancellation of the plaintiff's policy was improper, we do not consider their validity.

[8] We do not consider the assertion in the brief filed by Colony and Main (Empire's brief makes no separate argument on this matter) that the plaintiff did not give proper written notice of the accident to Empire and that Empire is thereby excused from liability on the policy. This assertion does not rise to the level of argument. It merely cites a provision of the policy and makes a reference to a part of the transcript not included in the record appendix. The defendants furnish no analysis to this court which might be helpful in reaching a decision in this rather complex area. (Cf. e.g., *Milton Ice Co.* v. *Travelers Indemnity Co.*, 320 Mass. 719, 721–722 [1947]). See Mass.R.A.P. § 16(a)(4) as amended effective February 24, 1975, 367 Mass. 921 (1975) ("The appellate court need not pass upon questions or issues not argued in the brief"). *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 126–127 (1971).

2. *The liability for damages.* The contention of Main and Colony that they cannot be held liable if the plaintiff can recover from Empire on the policy—the only contention they make in this connection—is without merit. The claim against Main and Colony is for damages arising from their action in causing Empire wrongfully to repudiate its insurance contract with the plaintiff. See *Grammenos* v. *Zolotas,* 356 Mass. 594, 597 (1970); *Pino* v. *Trans-Atlantic Marine, Inc.,* 358 Mass. 498, 504 (1970). For such interference the plaintiff has a tort claim against Main and Colony which she properly joined with her claim on the policy against Empire. Mass.R.Civ.P. 20(a), 365 Mass. 766 (1974). *M.F. Roach Co.* v. *Provincetown,* 355 Mass. 731, 732–733 (1969). See *Gentile Bros.* v. *Rowena Homes, Inc.,* 352 Mass. 584, 585, 591–592 (1967). All three are wrongdoers—Empire because it repudiated its contract and Main and Colony because they induced the breach; they are all therefore liable for the benefits under the insurance policy of which they wrongfully deprived the plaintiff. *H.D. Watts Co.* v. *American Bond & Mortgage Co.,* 260 Mass. 599, 613–614 (1927). *National Merchandising Corp.* v. *Leyden,* 370 Mass. 425, 430–431 & n.6 (1976). See *Gentile Bros.* v. *Rowena Homes, Inc., supra*; *M.F. Roach Co.* v. *Provincetown, supra.* It is no defense to the claim against Main and Colony that the plaintiff also has a claim against Empire. *Phillips & Benjamin Co.* v. *Ratner,* 206 F.2d 372, 376 (2d Cir. 1953). *Wilson & Co.* v. *United Packinghouse,* 181 F. Supp. 809, 819 (N.D. Iowa, 1960). *Louis Schlesinger Co.* v. *Rice,* 4 N.J. 169, 181 (1950). Prosser, Torts § 129, at 948 (4th ed. 1971). Annot., 26 A.L.R.2d 1227, 1257, § 19 (1952). There is nothing to the contrary in *Comerford* v. *Meier,* 302 Mass. 398, 404–405 (1939), and *Backman* v. *Guiliano,* 331 Mass. 231, 232 (1954), cited by Main and Colony. In those cases the contract in question was never breached; here Empire has breached the insurance contract.

3. *Amount of damages.* (a) The defendants' attack on the judge's award of $1,278.32 damage to her automobile

overlooks the fact that the parties stipulated at the beginning of trial that this sum was the amount of damages to the automobile. That the stipulation was made with reference to an estimate of the cost of repairs which the plaintiff had received seems to us beside the point. We thus need not deal with the defendants' argument that the proper measure of the plaintiff's recovery is the diminution in market value. Further, the defendants' brief is silent on the question whether that is the measure of recovery under the policy (see St. 1974, c. 503, § 1, amending G. L. c. 90, § 34 I [1], as in effect on the date of the accident)—whatever its other applications. And they overlook that the estimate of the cost of repairs is evidence on the issue of the diminution in market value. *Medford Housing Authy.* v. *Marinucci Bros.*, 354 Mass. 699, 703–704 (1968), citing *Childs* v. *O'Leary*, 174 Mass. 111, 114–116 (1899), and *Colangeli* v. *Construction Serv. Co.*, 353 Mass. 527, 530 (1968).

(b) We agree with the defendants that the award in the judgment of "$1,000.00 for expenses incurred since the date of the accident" cannot stand. The judge found that "the plaintiff's car could not be driven and was towed by City Wide Wrecker Service to their place of business where it has been accruing storage fees at the daily rate of $2.50." However, it is undisputed that no evidence was introduced as to the storage fees or the towing charge.[9] Nor can the plaintiff in this case rely on the proposition that the trial judge could, solely on the basis of his general knowledge and experience, make a finding as to what a reasonable daily charge for storage (in Atlanta, Georgia) of the plaintiff's car would be. Compare *Scullane* v. *Kellogg*, 169 Mass. 544, 550 (1897), *McGarrahan* v. *New York, New Haven & Hartford R.R.*, 171 Mass. 211, 220 (1898), *Thibault* v. *DeVio*, 318 Mass. 605, 606–607 (1945), and *Green* v. *Richmond*, 369 Mass. 47, 55 (1975), with

---

[9] No argument is made that such fees and charges are not covered by the policy.

*Driscoll* v. *Bunar,* 328 Mass. 398, 403 (1952), and *Hurwitz* v. *Parkway Country Club, Inc.,* 343 Mass. 661, 666 (1962). However that may be (and we do not decide the point) that is not what the trial judge purported to do; rather he found that the actual daily charge to the plaintiff for the storage of her car was $2.50 a day. There being no such evidence of the daily charge, this finding was clearly erroneous and could not be a basis for the ultimate finding of $1,000. Further, there is no indication of what portion of the $1,000 is attributable to the towing. Again, even assuming that the towing of a car is a service of such an ordinary nature that, with a sufficient description of the towing involved, a trial judge could, in the usual case, make a finding as to its value solely on the basis of his general knowledge and experience, we have nothing in the record appendix besides the bare fact that there was towing involved.[10] *Pearl* v. *Wm. Filene's Sons Co.,* 317 Mass. 529, 533 (1945).

## The Plaintiff's Appeal

1. *General Laws, c. 140C and c. 255C.* The plaintiff argues that the trial judge erred when he failed to find the premium financing agreement to be in violation of the disclosure requirements of G. L. c. 140C and c. 255C and failed to subject all three defendants to the $100 minimum penalty therefor (together with costs and attorney's fees) provided by G. L. c. 140C, § 10(*b*), as amended by St. 1972, c. 229, § 9.[11] We agree.

---

[10] It seems curious that at $2.50 a day from the date of the accident, June 29, 1974, to the date of the close of the hearing, April 15, 1975, the total storage charges do not exceed $725, which leaves a rather unusual sum of $275 as the towing charge. Nor was there any testimony by the plaintiff or otherwise as to any other damage. *Pearl* v. *Wm. Filene's Sons Co.,* 317 Mass. at 533.

[11] General Laws c. 140C, § 10(*b*), as so amended, reads as follows:

"Any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this chapter or any rule or regulation made thereunder by the commissioner to be disclosed to that person shall be liable to that person

General Laws c. 255C, regulating insurance premium financing, was inserted by St. 1964, c. 727, § 1; five years later G. L. c. 140C, the Massachusetts Truth-in-Lending Act, was inserted by St. 1969, c. 517, § 1. Section 21 of St. 1969, c. 517, added to G. L. c. 255C a new § 23 which provides: "A transaction, although subject to this chapter, shall also be subject to the provisions of . . . [G. L. c. 140C] and in the case of conflict between the provisions of this chapter [G. L. c. 255C] and that chapter, the provisions of that chapter shall control." We therefore base the following discussion primarily on the provisions of G. L. c. 140C.

At the beginning of the trial the parties stipulated that when the plaintiff signed the premium financing agreement on January 3, 1974, certain information including the "date [of] first payment," the "deferred payment price," and the date on which the "finance charge will begin to accrue" had not been written in the spaces provided for that information on the form for the premium financing agreement. The failure to write in the date of the first payment constituted a violation of G. L. c. 140C, § 7(b)(3), inserted by St. 1969, c. 517, § 1, requiring that "due dates or periods of payments" be disclosed. Compare item 3 of the third paragraph of G. L. c. 255C, § 13. The failure to write in the deferred payment price constituted a violation of G. L. c. 140C, § 7(c)(8). *Walker* v. *College Toyota, Inc.*, 399 F. Supp. 778, 779–781 (W.D. Va. 1974), aff'd, 519 F.2d 447 (4th Cir. 1975). Compare item 10 of the

in an amount equal twice the amount of the finance charge in connection with the transaction, except that the liability under this clause shall not be less than one hundred dollars nor more than one thousand dollars, and in the case of any successful action to enforce such liability, the costs of the action together with a reasonable attorney's fee as determined by the court, but a creditor may not be held liable in any action brought under this subsection, if he shows by a preponderance of evidence that such violation was not intentional and resulted from a bona fide error in a mathematical computation, or in the layout or format, size of type or order of clauses contained in such disclosure statement."

second paragraph of G. L. c. 255C, § 13. Because the premium financing agreement was signed on January 3, 1974, and interest began to accrue on January 1, 1974, the failure to write in the date interest began to accrue constituted a violation of G. L. c. 140C, § 7(*b*)(1), inserted by St. 1969, c. 517, § 1, requiring that the due date on which the finance charge begins to accrue be disclosed "if different from the date of the transactions." *Ljepava* v. *M.L.S.C. Properties, Inc.*, 511 F.2d 935, 943 n.8 (9th Cir. 1975). Compare item 1 of the third paragraph of G. L. c. 255C, § 13.

There is no merit in the defendants' contention that oral disclosure to the plaintiff by Main of the missing information (of which, the defendants argue, there was sufficient evidence) constituted compliance with G. L. c. 140C. That contention flies in the face of G. L. c. 140C, §§ 5(*a*)[12] and 7(*a*), both inserted by St. 1969, c. 517 § 1.[13] See

---

[12] Section 5(*a*), as so inserted, provides in pertinent part: "The disclosures required to be given by this chapter shall be made clearly, conspicuously, in meaningful sequence, . . . at the time and in the terminology prescribed in applicable sections. Where the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other terminology required by this chapter. Except with respect to the requirements of section nine, all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, seventy-five one thousands inch computer type, or elite size typewritten numerals, or shall be legibly handwritten."

[13] Section 7(*a*), as so inserted, provides in pertinent part: "Any creditor when extending credit other than open end credit shall, in accordance with section five and to the extent applicable, make the disclosures required by this section . . ., such disclosures shall be made before the transaction is consummated. At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All disclosures shall be made together on either (1) the note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or (2) except as otherwise provided in chapters two hundred and fifty-five B, two hundred and fifty-five C and two hundred and fifty-five D, one side of a separate statement which identifies the transaction."

*Kristiansen* v. *Mullins & Sons, Inc.,* 59 F.R.D. 99, 110 (E.D.N.Y. 1973); *Evans* v. *Household Finance Corp.* (D.C. Iowa 1973), C.C.H. Consumer Credit Guide, par. 99007 (Transfer Binder 1973). The mere inspection of §§ 5(*a*) and 7(*a*), as set out in note 12 and note 13, *supra,* demonstrates that the defendants' contention approaches the frivolous. Were we to decide that the oral disclosure of required information was sufficient to avoid liability under G. L. c. 140C, § 10(*b*), it would emasculate the Act. Cf. *Ratner* v. *Chemical Bank N.Y. Trust Co.,* 329 F. Supp. 270, 280 (S.D.N.Y. 1971). The fact that at some point after January 3, 1974, the missing information was written on the premium financing agreement is irrelevant, even assuming that the plaintiff was somehow informed of this fact. General Laws c. 140C, § 7 (with certain exceptions not relevant to the present case), clearly mandates that the disclosures required by that section "be made before the transaction is consummated" (see note 13, *supra)* in order that the consumer may have an opportunity to comparison shop for the best credit terms available. Here, the transaction was consummated on January 3, 1974, when the plaintiff signed the premium financing agreement. G. L. c. 140C, § 1(*bb*). 15 U.S.C. § 1601 (1970). *Wachtel* v. *West,* 176 F.2d 1062, 1064–1066 (6th Cir.), cert. denied, 414 U.S. 874 (1973). *Hardin* v. *Cliff Pettit Motors Inc.,* 407 F. Supp. 297, 299 (E.D. Tenn. 1976). Cf. *Lynch* v. *Signal Finance Co.,* 367 Mass. 503, 507–508 (1975). It is true that G. L. c. 140C, § 5(*e*), inserted by St. 1969, c. 517, § 1, allows the creditor, in instances where an item of information required to be disclosed is unknown at the time the disclosures must be made, to "use an estimated amount ... clearly identified as such" and provide the accurate information later, but before the due date of the first installment. Here no "estimated amount" was written in on the premium financing agreement in place of the information not disclosed.[14]

[14] No claim has been made that the failure to disclose all the information required by G. L. c. 140C, § 7, "resulted from a bona fide error

The liability of the defendants under G. L. c. 140C, § 10(*b*), is "mandatory" (*Shepard* v. *Finance Associates of Auburn, Inc.,* 366 Mass. 182, 195–196 [1974]; See *Grant* v. *Imperial Motors,* 539 F.2d 506, 510–511 [5th Cir. 1976]); *Thomas* v. *Myers-Dickson Furniture Co.,* 479 F.2d 740, 746 [5th Cir. 1973]); the plaintiff is entitled to the award which she requests of a single $100 penalty (together with her costs and reasonable attorney's fees) from the defendants jointly and severally.[15]

2. *General Laws c. 93A.* While it is true that violations of G. L. c. 140C also constitute violations of G. L. c. 93A (see G. L. c. 140C, § 12), the plaintiff cannot succeed in her effort to recover treble damages pursuant to G. L. c. 93A, § 9(3). The record appendix reveals no evidence that the plaintiff at least thirty days before the commencement of

---

in a mathematical computation, or in the layout or format, size of type or order of clauses contained in" the premium financing agreement. See G. L. c. 140C, § 10(*b*) (note 11, *supra*).

[15] The case has been argued on the footing that G. L. c. 140C, § 10(*b*), is applicable to all three defendants—presumably to Main as one who "regularly . . . arranges for the extension of consumer credit," G. L. c. 140C, § 1(*l*), inserted by St. 1969, c. 517, § 1, to Empire, which the judge found was Main's principal (see *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.,* 4 Mass. App. Ct. at 177–178, *S.C.* 373 Mass. at 597), on the same basis, and to Colony as one who "regularly extends . . . credit", G. L. c. 140C, § 1 (*l*), and also, as the trial judge found, as Main's principal. See *Joseph* V. *Norman's Health Club, Inc.,* 532 F.2d 86, 91–93 (8th Cir. 1976); *Mirabal* v. *General Motors Acceptance Corp.,* 537 F.2d 871, 874 n.1 (7th Cir. 1976); *Meyers* v. *Clearview Dodge Sales, Inc.,* 539 F.2d 511, 514–516 (5th Cir. 1976), interpreting 15 U.S.C. § 1602(f) (Supp. V 1975), the provision of the Federal Truth-in-Lending Act defining "creditor." See also Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.2(h) (1977). ("The Massachusetts Truth-in-Lending Act is closely modeled upon the Federal Truth-in-Lending Act," and the two are "substantially similar." *Lynch* v. *Signal Finance Co.,* 367 Mass. at 505.)

The plaintiff raises no question of entitlement beyond a single $100 recovery (plus costs and attorney's fees) against the three defendents jointly and serverally. See *Mirabal* v. *General Motors Acceptance Corp., supra* at 880-881; *Meyers* v. *Clearview Dodge Sales, Inc., supra* at 520-521.

her suit sent any of the defendants a written demand for relief "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." G. L. c. 93A, § 9(3), inserted by St. 1969, c. 690. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975).

## Conclusion

The judgment is reversed and the case is remanded to the Superior Court which shall enter judgment declaring that the plaintiff's insurance policy was in full force and effect on June 29, 1974, and awarding to the plaintiff against the defendants jointly and severally $1,294.32 ($1,278.32 for damages to her automobile plus $16 for medical expenses) plus interest from the date of the commencement of the action. See G. L. c. 231, §§ 6B and 6C, as amended by St. 1974, c. 224, §§ 1 and 2 respectively.[16] The judgment shall also award to the plaintiff against the defendants jointly and severally the minimum $100 penalty prescribed by G. L. c. 140C, § 10(*b*), plus costs and a reasonable attorney's fee which the trial judge shall determine. See *Meyers* v. *Clearview Dodge Sales, Inc.*, 539 F.2d 511, 514 (5th Cir. 1976); *McGowan* v. *Credit Center of North Jackson, Inc.*, 546 F.2d 73, 77 (5th Cir. 1977). The plaintiff's costs of these appeals shall be taxed against the defendant Main.

*So ordered.*

This case was initially heard by a panel composed of Keville, Goodman and Armstrong, JJ., and was thereafter submitted on the record and briefs to Hale, C.J., and Brown, J., who took part in this decision in accordance with the provisions of Rule 1:18 of this court.

---

[16] The plaintiff does not point to a specific date of demand against Empire earlier than the commencement of the action.

BROWN, J. (concurring). I fully concur in the majority opinion. In addition to my usual disdain for those litigants with unclean hands seeking equity (compare *Teletransmissions, Inc.* v. *David,* 5 Mass. App. Ct. 864, 865 [1977] [Brown, J., concurring]), I find the defendants' contentions as unconvincing as their acts are unconscionable.

It may well be that as between Empire and Colony, Main was the agent of Empire; however, it is clear beyond doubt to me (as it was to the trial judge) that as between the plaintiff and Colony, Main must be considered the agent of Colony. See Restatement (Second) of Agency § 14L, Comment a, Illustration 1 (1958). This is a fundamental agency principle based on commercial convenience. See Sell, Agency § 109 (1975). See also Restatement (Second) of Agency § 8A (1958).

ARMSTRONG, J. (with whom Hale, C.J., joins, concurring in part and dissenting in part). The trial judge found that the plaintiff, on or shortly after June 13, 1974, "called Colony and was assured by them that she could make her payment after June 24, which she did." In context, the finding implies that the plaintiff was given an assurance that her policy would not be cancelled on June 24, the stated effective date of the notice of cancellation previously mailed, and that she was to have a reasonable time thereafter to pay Colony the $42.86 then owing.[1] This critical finding is nowhere challenged by Colony; its two briefs ignore the finding; and we are in no position to conclude that it was not supported by the evidence, much of which has not been reproduced in the appendix. It follows from that finding that Colony's cancellation of the

[1] Failure to comply with the requirement of G. L. c. 255C, § 20, that an agreement to extend the time for making an installment payment must be in writing and signed by the parties, would bar collection of a deferment charge for such an extension but would not otherwise affect the validity of an extension.

Carter v. Empire Mutual Ins. Co.

policy under the power of attorney given the holder[2] of the plaintiff's note by the terms thereof was wrongful, and on general principles Colony is liable for the damages flowing from that wrongful cancellation. As to the measure of those damages, we concur in the majority opinion.

There is nothing in the judge's findings, however, which indicates that either Empire or its agent, Main, is liable for damages resulting from cancellation of the policy. The theory upon which the majority holds Empire liable—namely, that it had no right to cancel the policy for "non-payment of premiums"[3] when its agent Main held money owing to the plaintiff sufficient to bring the premium payments up to date—is inapplicable for at least two reasons: first, it was the insured (acting through her attorney, the holder of the note) and not Empire who cancelled the policy, the cancellation having been for the purposes of obtaining return of the unused portion of the premium;[4] and, second, whatever preliminary discussions may have taken place, the plaintiff signed a note which plainly disclosed that only $73.80 of her down payment had been applied to the insurance premium and which obligated her to pay $30.94 on the first day of each month for eight consecutive months. On the facts found, that note was not the product of fraud or mutual mistake; and neither the fact that the plaintiff may not have read the note at the time she signed it (*Cohen* v. *Santoianni*, 330 Mass. 187, 193 [1953]) nor the fact that Main may be

[2] Colony was a "holder" under the Uniform Commerical Code definition (G. L. c. 106, § 1–201[20]) because the assignment, being written on the face of the note, was in legal effect an indorsement. Mass.Ann. Laws c. 106, § 3-202(4), & Comment 5 (1976). See cases cited in 11 Am. Jur. 2d § 356 (2d ed. 1963).

[3] The terminology is misleading. The premium was fully paid at the outset, when the plaintiff signed the note. *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.*, 4 Mass. App. Ct. 172, 179 (1976), *S.C.* 373 Mass. 594 (1977). What gave rise to the controversy was the plaintiff's failure to make the payments called for by the note.

[4] Colony forwarded to Empire the statement required by G. L. c. 90, § 34K, and Empire was entitled to rely on that statement.

obligated to return to her the $35 which it, without authorization, applied to renewing her membership in the automobile club altered her obligation to make the monthly payments she promised to make by signing the note.

Main cannot be held liable on the theory, advanced by the majority, of tortious interference with contract, because Main had nothing whatever to do with effecting the cancellation of the policy.[5] Nor can Main's liability be predicated on its having been Empire's agent; for even if we assume, contrary to the facts found by the judge, that it was Empire which cancelled the policy and that Empire thereby breached the insurance contract, Main would not be similarly liable. The agent of a disclosed principal is not ordinarily personally liable for his principal's breach of contract (see Restatement [Second] of Agency § 320 [1958]; 16 Appleman, Insurance Law & Practice § 8832 [1968] at 459–461; Keeton, Insurance Law [1971] at 51), unless the breach is the result of the agent's own fraud. The trial judge made no finding of fraud,[6] and fraud is not to be presumed. *Cohen* v. *Santoianni, supra* at 192. *Stow* v. *Commissioner of Corp. & Taxn.*, 336 Mass. 337, 341 (1957). *Gifford* v. *Gifford*, 354 Mass. 247, 248 (1968).

---

[5] Parenthetically, we do not understand how a theory of tortious interference with contract can have any application to Colony, because the latter, in cancelling the contract, was simply trying to protect its own economic interest by exercising its contractual right to apply any available return premium to a note in default. See Prosser, Torts § 129, at 944–945 (4th ed. 1971); 1 Harper & James, Torts 514–516 (1956).

[6] The findings were that the plaintiff intended the entire initial payment ($108.80) to be applied to the insurance premium and that she did not ask to have her membership in the auto club renewed. There were no findings that Main knew when it applied $35 of the initial payment to renewal of the auto club membership that that was contrary to her intention or that she instructed Main at any time not to renew that membership.

As to the defendants Main and Empire, we concur in those portions of the majority opinion dealing with the judge's refusal to award the plaintiff $100 damages and attorney's fees under G. L. c. 140C, § 10(*b*). The defendant Colony is not similarly liable. It is clear from the judge's findings and from the evidence and the terms of the note that Colony did not become the plaintiff's creditor until the note was assigned by Main to Colony, and that Colony was not a "creditor" at the time Main violated the disclosure requirements of G. L. c. 140C and G. L. c. 255C. The judge's finding or conclusion that Main was Colony's agent was plainly wrong. There was no evidence that Colony had given Main actual authority, express or implied, to enter into business transactions in Colony's behalf, and no ostensible or apparent authority could be found from the note which, on its face, plainly indicated that Colony would become a party to the transaction only if and when Main should assign the note to it. The fact that Main regularly assigned such notes to Colony furnished no basis for a conclusion that Colony was Main's principal (see Anderson Uniform Commercial Code § 3–302:14, at 827 [2d ed. 1971]); to the contrary, if such a relationship existed, Colony would be payee from the outset and assignment would be superfluous. Colony was a stranger to the transaction at the time the truth-in-lending violations occurred and thus is not liable to the plaintiff for the statutory penalty. Contrast G. L. c. 140C, § 10(c). See now G. L. c. 140C, § 10(*g*), inserted by St. 1975, c. 592, § 11, effective September 6, 1975.